STATE EX REL. KRAUSE, Respondent, vs. JONES and others (constituting the Live Stock Sanitary Board), Appellants.

*May 7—July 3, 1928.*

The cause was submitted for the appellants on the brief of the *Attorney General, Suel O. Arnold,* assistant attorney

general, and *Adeline J. Meyer,* legal investigator, and for the respondent on that of *Olin & Butler,* attorneys, and *R. M. Rieser,* of counsel, all of Madison.

ROSENBERRY, J. The relator is a farmer living near Genoa City, Wisconsin, and owns a herd of pure-blood Holstein-Friesian cattle. These cattle were registered in the Holstein-Friesian Registry Association, Inc., of Harrisburg, Pennsylvania. Nine head of registered cattle belonging to the plaintiff were killed pursuant to the terms of the Live Stock Sanitation Act (ch. 94, Stats.). The cattle were alleged to be reasonably worth $1,845.

Sub. (1) of sec. 94.16, Stats., provides:

"For each animal condemned and slaughtered the owner shall receive in addition to the net salvage upon the certificate of the department of agriculture and the state shall pay the owner in cases coming under the co-operative agreement between the state and the United States a sum equal to one fourth of the difference between the net salvage and the appraised or agreed value of the animal, but additional payment shall not exceed forty-five dollars for a registered bovine and twenty dollars for an unregistered one. In other cases the owner shall receive in addition to the net salvage, and the state shall pay, half of the difference between the net salvage and the appraised or agreed value, but not more than ninety dollars for a registered bovine and forty dollars for an unregistered bovine."

The act nowhere defines what is meant by a registered bovine. The claim of the relator was disallowed by the board upon the sole ground that the Holstein-Friesian Registry Association, Inc., of Harrisburg, Pennsylvania, was an organization not in existence when the law under which the Live Stock Sanitary Board operates was enacted, and "that it is the belief of this board when this law was enacted that it referred only to those breed organizations in existence at that time."

By the allegations of the petition, which are admitted by the demurrer or motion to quash, every other necessary fact entitling the plaintiff to have his claim allowed existed.

The principal contention of the board is that *mandamus* does not lie to control the discretion of the board or to compel the performance of a discretionary act. This may be readily conceded, but it was also argued that where the duty of an officer to perform an act depends upon the construction of a statute, the construction of the statute by the officer involves the exercise of discretion and judgment on his part which cannot be controlled by *mandamus,* citing *American Cas., I. & S. Co. v. Fyler,* 60 Conn. 448, 22 Atl. 494, 25 Am. St. Rep. 337.

A careful examination of this case indicates that it does not support the proposition to which it is cited. In that case it is said:

"It is admitted that there is no statute or rule of law that in terms makes it the duty of the defendant to admit the plaintiff to do in this state the kinds of business specified in its application. If it is his duty so to admit the plaintiff, it is because such duty falls within the ordinary duties of his office; and this must be gathered from the construction of the insurance statutes. The defendant has construed these statutes as requiring, or at least as authorizing, him to refuse the plaintiff's application. The plaintiff insists that such construction is wrong. The whole contention of the plaintiff's counsel is, that the statutes of this state respecting insurance, if construed in the light of the policy of this state towards the insurance companies of other states, and in the light of state comity, would make it the duty of the defendant to grant the plaintiff's request; and they say that their interpretation of these statutes is too obviously correct to admit of dispute, and that therefore the duty which they ask that the defendant should perform is purely a ministerial one. This contention, however, involves a contradiction. The construction of a statute is not a ministerial act; it is the exercise of judgment. If it is the duty of the defendant to admit or not to admit the plaintiff to do business in this

state according to the interpretation to be put on the insurance statutes, then the admitting or refusing to admit involves the exercise of discretion and judgment. It is precisely the same kind of a duty which selectmen perform in respect to the admission of electors . . . or assessors in respect to the liability of property to taxation."

The court holds that the act which was there under consideration conferred upon the administrative official *quasi*-judicial rather than ministerial duties. The language used by the court was perhaps unfortunate. Whether an insurance company should be admitted was to be determined by the insurance commissioner in the exercise of his discretion, and if in the exercise of his discretion the application of the company was denied it was not solely upon the interpretation which the insurance commissioner placed upon the act, but the interpretation which the insurance commissioner placed upon it as applied to the facts presented by the particular application. If a statute requires an act to be done by an administrative officer within a reasonable time, no doubt, in the absence of arbitrary or clearly unreasonable exercise of discretion, the time fixed by the administrative official would be approved by the court. While in a sense the determination of what is a reasonable time is an interpretation of the statute, it is rather the application of a statute to a particular situation. If in this case the Live Stock Sanitary Board had found that the cattle were not registered or that they were not tubercular, or a controversy existed as to the value of the cattle or with reference to any other fact which the Live Stock Sanitary Board had jurisdiction to determine, no doubt its determination could not be controlled by *mandamus* even if it rested upon a mistaken interpretation of the statute. The facts in this case present no such issue. Here all of the matters of fact, according to the allegations of the petition, have been determined in favor of the claimant. Instead of confining its action to the duties conferred upon

it by the statute, the Live Stock Sanitary Board interprets the statute as if the word "registered" had been defined by the act to mean "registered in an association existing at the time of the passage of the act." This amounts to a clear amendment of the statute. Having found all of the necessary facts which it had authority or jurisdiction to find under the act, thereafter the duties of the board were purely ministerial. It was its duty to allow the claim and not to interpose an objection based upon its supposition as to what the legislature in fact intended, there being nothing in the act itself to indicate that the legislature had any such intention. The distinction was clearly pointed out in *Roberts v. U. S. ex rel. Valentine,* 176 U. S. 221, 230, 20 Sup. Ct. 376. After discussing the case of *U. S. ex rel. Dunlap v. Black,* 128 U. S. 40, 9 Sup. Ct. 12, the court says:

"In this case the facts are quite different. There is but one act of Congress to be examined, and it is specially directed to the treasurer. We think its construction is quite plain and unmistakable. It directs the treasurer to pay the interest on the certificates which had been redeemed by him, and the only question for him to determine was whether these certificates had been redeemed within the meaning of that act. That they were, we have already attempted to show, and the duty of the treasurer seems to us to be at once plain, imperative, and entirely ministerial, and he should have paid the interest as directed in the statute. . . .

"Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer." See cases cited in Rose's Notes; also *Harwood v. Quinby,* 44

Iowa, 385; *Speer v. Dossey*, 177 Ky. 761, 198 S. W. 19; *Dufton v. Daniels*, 190 Cal. 577, 213 Pac. 949.

It is considered that the duty of the Live Stock Sanitary Board, other necessary facts existing, and it appearing that the relator's cattle were duly registered in an association, was to allow the claim in accordance with the terms of the statute, and that *mandamus* is a proper remedy under the circumstances of this case.

It is nowhere claimed that the association in which the relator's cattle were registered was not a *bona fide* registry association, nor is it claimed that cattle registered therein did not pass in the market as registered cattle. There is no claim of fraud, subterfuge, or anything of the kind in this case. We find nothing in the act which gave the Live Stock Sanitary Board power to determine which association they will recognize and which they will not. If other facts required by the statute appear and the cattle are registered, it is the duty of the board to allow the claim as and for registered cattle. Assuming that an association is a reputable recognized concern, the mere fact that it was not organized prior to the passage of the act does not affect the question.

*By the Court.*—Judgment affirmed.