STATE EX REL. BOARD OF EDUCATION, Appellant, vs. CITY OF RACINE and others, Respondents.

*April 8—October 13, 1931.*

For the appellant there were briefs by *Foley & Brach* of Racine and *Benjamin Poss* of Milwaukee, and oral argument by *Mr. Poss.*

*Martin R. Paulsen* of Racine, for the respondents.

The following opinion was filed May 12, 1931:

OWEN, J. The city of Racine is a city of the second class. Its schools are operated under the city school plan provided by secs. 40.50 to 40.60, Stats. A controversy exists between the Board of Education and the common council in the matter of their respective powers. The Board of Education had determined that the educational necessity of the city required the erection of a new school building, and demanded of the city council that it cause to be issued the bonds of the city to the amount of $350,000 to pay for the same. The common council refused to accede to the demand. This action of *mandamus* is brought to compel the city council to issue the bonds of the city to the amount of $350,000 for the purpose of enabling the Board of Education to proceed with the proposed construction. The question is whether the common council possesses discretion in the matter, or whether it is its duty upon demand to provide such funds as the Board of Education deems necessary for the management and maintenance of the schools and construction of school buildings.

Sec. 40.53, Stats., provides that it shall be the duty of the board of education, among other things, (11) "to estimate the expenses of the city schools and prepare a budget, which shall be submitted to the common council for its approval. Approval of the council shall also be necessary before the board may purchase any site for a school building or other school uses, or construct school buildings

or additions thereto." Sec. 40.55 provides that "The school board shall annually, before October, make an estimate of the expenses of the public schools for the ensuing year, and of the amount which it will be necessary to raise by city taxation, and certify the same to the city clerk who shall lay the same before the common council at its next meeting. It shall be the duty of the common council to consider such estimate, and by resolution determine and levy the amount to be raised by city taxation for school purposes for the ensuing year, which amount shall be included in the annual city budget and be called the 'City school tax.' "

That these provisions confer upon the common council, full supervision of the tax burden that shall be imposed upon the city for school purposes, seems plain. The Board of Education is not given authority to levy a tax for school purposes. Neither is it given the power to fix the amount that shall be levied for such purposes, as is the case under the charter of the city of Milwaukee. *State ex rel. Harbach v. Mayor, etc.* 189 Wis. 84, 206 N. W. 210. It is simply made the duty of the Board of Education "To estimate the expenses of the city schools and prepare a budget, which shall be submitted to the common council for its approval." It is made the duty of the common council "to consider such estimate, and by resolution determine and levy the amount to be raised by city taxation for school purposes for the ensuing year."

Any doubt that may arise concerning the authority of the Board of Education in the premises must be due to the fact that school districts have been recognized as separate municipal entities, the territory of which may be coextensive with that of cities, and the power of the common council to limit the amount of taxes that may be raised for school purposes is irreconcilable with the idea that the school district is a separate municipal entity. Sec. 3 of art. X of the constitution makes it the duty of the legislature "to provide by law

for the establishment of district schools." It will be noticed that nothing was said about school districts. However, the establishment of district schools in rural communities necessarily requires the formation of school districts. School districts are not required if other subdivisions of government may provide district schools. While cities and villages are appropriate entities for administration of educational affairs, until recently no consistent policy has been adopted with reference to the administration of educational affairs in cities. Special city charters specified various forms and methods for the administration of educational affairs. In some cities a board of education was established, while in others the school district system remained in force. This is recognized by sec. 925—113, Stats. 1898. Where boards of education were created by special charters, they sometimes were and sometimes they were not empowered to levy the school tax. This is recognized by sec. 925—119, Stats. 1898. However, the general charter law vested in the common council not only the duty of levying the school tax but of determining the amount that should be so levied. Sec. 925—119, Stats. 1898; *State ex rel. Jones v. Burke,* 140 Wis. 524, 123 N. W. 110. This was a step in the interests of uniformity. It also promoted economy and simplicity by utilizing an existing municipality as a medium for the administration of educational affairs.

When the general charter law was revised in 1921 and all special charters abolished, the former provisions of that law relating to schools were carried into ch. 40 of the Revised Statutes, also relating to schools. Ch. 242, Laws of 1921. While there are some verbal differences between sec. 40.64 (8), Stats. 1923, and sec. 925—119, Stats. 1898, the substance remains the same. Sec. 925—119 required the board of education to submit their estimate of the expense of maintaining the public schools for the ensuing year to the common council, and provided "that the same, or so much as they shall approve," should be levied as a city school tax.

This clearly provided that only so much as the city council should approve should be levied as school taxes. Sec. 40.64. (8), Stats. 1923, as well as sec. 40.55, Stats. 1929, require the common council to determine by resolution "the amount to be raised by city taxation for school purposes." The only difference between these provisions as they appear in the Statutes of 1898 and in the Statutes of 1929 is in verbiage and not in substance.

The present legislative plan, whether our consideration be confined to secs. 40.50 to 40.60, inclusive, of the Statutes of 1929, or whether other related provisions of the statutes be regarded, seems to be to make the city the municipal entity for the administration of school affairs. The members of the board of education are city officers. They may be appointed by the mayor, elected by the common council or at the municipal election. Sec. 40.52, Stats. 1929. They have general power to supervise and manage the city school system, as specifically defined and set forth in sec. 40.53, Stats. They have no power to levy a school tax. They have power only "to estimate the expenses of the city schools and prepare a budget" which is to be submitted to the city council. The city council determines by resolution the amount of the tax to be levied. The approval of the council is also necessary before the board may purchase any site for a school building or construct school buildings or additions thereto. The legislative purpose to put the fiscal affairs of the city under the control and management of the city council in all respects seems undoubted. The board of education may manage and supervise the schools, but it has no power to impose a school tax. That power is left with the city council, which, in imposing the tax, may take into consideration the general financial condition of the city and its other municipal necessities.

No doubt it was the legislative thought that there would be helpful co-operation between the common council and the board of education. This is a commendable policy and

should obtain. The common council should not arbitrarily or unreasonably embarrass the board of education in promoting the cause of education. The board of education is dealing with a special subject. It is necessary for it to visualize the future educational necessities of the city and to plan to meet such necessities. On the other hand, the common council is the fiscal authority of the city. It knows and understands the financial conditions of the city and the general municipal problems imposing burdens upon the taxpayers. Exorbitant demands of the board of education might very well make it impossible to carry forward other municipal undertakings of the greatest importance. There is sound policy in centralizing the taxing authority where a proper balance and proportion may be fixed and maintained in the matter of tax levies for all municipal purposes.

Many other provisions of the statutes might be cited to indicate that the board of education is merely an arm of the city government rather than the officers of an independent municipal entity. For instance, sec. 17.12 gives the common council the power to remove members of the school board for cause. Sec. 17.26 gives the mayor power to fill vacancies on the school board. Sec. 67.04 (2) (b) gives the city power to issue bonds for the construction of school buildings. Sec. 62.22 (2) (c) authorizes cities to condemn land for school purposes. It is significant that the power to issue bonds and to condemn land for school purposes is not conferred upon school districts coextensive with municipalities. Sec. 25.05 (2) requires all applications for loans from the public land commissioners by a city to be approved by a two-thirds vote of the common council. Sec. 64.10 (3) provides that the board of education may be discontinued by a vote of the people, and in such case the powers and duties of such board shall be exercised and performed by the council and city manager. Sec. 40.53 (6) provides that deeds and leases taken by the school board shall be in the name of the city, and the title to all school property shall

vest in the city. All of these provisions and others might be cited to indicate the legislative purpose that school affairs shall constitute a municipal function in cities and that the board of education is merely a city agency the same as the board of public works. While it is given great powers over schools of the city, the power to determine the amount that may be imposed in the form of taxes for the purposes of education in the city is lodged with the city council. It follows that the common council cannot be coerced to issue the bonds of the city as demanded by the board of education.

Another object sought to be attained by the petition for the alternative writ of *mandamus* is to make available to the Board of Education the sum of $120,000 now in the city treasury. It appears that this amount constitutes the proceeds arising from the sale of certain school property. It seems to be conceded that this is a trust fund devoted to and to be held for the construction of new school buildings. That the Board of Education will have the right to use this fund when it is authorized to construct new buildings seems to be conceded by all parties. At the present time the common council has not approved the construction of the building which the Board of Education proposes to build and, consequently, the $120,000 trust fund is not available to it at the present time. It is entitled to no relief with reference to that fund.

In arriving at our conclusion we have not overlooked the provisions of sec. 40.51, Stats., which provides that "Each city, affected by this plan, is a single and separate school district." Just what the legislative thought was in making this declaration is not clear. It is quite apparent that by so doing it was not intended to create a separate and distinct municipal entity out of the territory within the city limits. It was rather to make the school system a unit under city government. It is to that end that the same section attached to the city for school purposes any territory outside of the city which was joined with the city territory in the forma-

tion of a school district when the plan became effective. The boundaries of the city were simply enlarged to include only for school purposes territory lying outside of the city which theretofore had been joined with city territory in the formation of a school district. In other words, the term "school district" as used in sec. 40.51 implies a system rather than a municipal entity.

A further question remains to be considered. The city attorney challenges the right of the Board of Education to maintain this action. The Board of Education is not a body corporate. It is not specifically authorized to sue or be sued. It administers only such funds as may be placed at its disposal by the city council for the maintenance of schools and the repair and construction of school buildings. No public funds are available to it for the payment of the expense of this litigation. Its contracts are city contracts. *Stroud v. Stevens Point,* 37 Wis. 367; sec. 40.53 (6), Stats. It has no such standing or power as is accorded to town school districts by sec. 40.86 (5), Stats. We must conclude that the Board of Education in its official capacity has no right to maintain this action. The question here presented might properly have been raised by a member of the board in his individual capacity, or by any taxpayer, as was the practice followed in *State ex rel. Harbach v. Mayor, etc.* 189 Wis. 84, 206 N. W. 210; *State ex rel. Hathaway v. Mirlach,* 174 Wis. 11, 182 N. W. 331; *State ex rel. Jones v. Burke,* 140 Wis. 524, 123 N. W. 110. But we can discover no authority for the maintenance of this action by the Board of Education in its official capacity. For the reasons herein stated the petition was properly dismissed upon the merits.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 13, 1931.