STATE EX REL. GENEVA SCHOOL DISTRICT NO. 1, Respondent, vs. MITCHELL, County Superintendent of Schools, and others, Appellants.

*October 11, 1932—February 7, 1933.*

382

For the appellants there was a brief by *Bogue & Sanderson* of Portage and *A. J. Thorson* of Elkhorn, and oral argument by *David R. Bogue* and *Thomas H. Sanderson*.

For the respondent there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *John B. Simmons*.

The following opinion was filed December 6, 1932:

OWEN, J. A petition was filed with the school district clerk of Geneva School District No. 1, under sec. 40.85, Stats., praying for the detachment of certain territory from said district. The clerk failed to notify the school district board of said petition, and no action was taken thereon by said board, upon which failure an appeal was taken to the county superintendent of schools of Walworth county, who acted upon said petition and made the detachment of territory as prayed therein. Thereafter Geneva School District No. 1 sued out this writ of *certiorari* from the circuit court for Walworth county. The defendants (appellants here) moved to supersede the writ, which motion was denied by the circuit court. The appeal is from the order denying the motion to supersede.

The respondent contends that the order is not appealable. It is settled in this state that a motion to supersede a writ of *certiorari* is in effect a demurrer, and that the order disposing of such motion is subject to the same right of appeal that

applies to a decision on demurrer. *State ex rel. Bidgood v. Clifton,* 113 Wis. 107, 88 N. W. 1019; *State ex rel. South Range v. Tax Commission,* 168 Wis. 253, 169 N. W. 555.

Numerous points are argued in support of the motion to supersede and for reversal of the order denying such motion. We find it unnecessary to consider many of the points argued in support of the motion, and shall place our disposition of the appeal on but one or two of the grounds stressed in the briefs and on the argument.

It is to be noticed that the action is brought by the school district in its corporate or municipal capacity. As Lake Geneva is a city of the fourth class, and the school district here in question comprises the city, together with certain contiguous territory, it is claimed by the defendants, appellants here, that the school district is under the city school plan of government provided in secs. 40.50 to 40.60, Stats. In *State ex rel. Board of Education v. Racine,* 205 Wis. 389, 236 N. W. 553, it was held that under the city school plan there was no separate municipal entity in the nature of a school district, and that the board of education was but an arm of the city government. This was held with respect of the city of Racine, which is a city of the second class, and it is contended that under *State ex rel. Grelle v. Carroll,* 203 Wis. 602, 234 N. W. 875, the same is true of cities of the fourth class. It is true that in the latter case it was said, perhaps *obiter,* that the city school plan applied to all cities of the fourth class as well as to all cities of the second and third class. The correctness of this holding is vigorously challenged by the relator, the respondent here, which challenge has prompted us to reconsider the question. If it be true that there is no separate municipal entity in the nature of a school district existing in the city of Lake Geneva, then it is apparent that there is no relator here, and the action must fail on that account.

Sec. 40.50, Stats., provides: "Sections 40.50 to 40.60 provide a plan or system of school administration for each

city of the fourth class *whose territory constitutes an entire school district,* and each city of the second or third class, to the end that city schools shall be as nearly uniform as practicable." It is to be noticed that the plan is made applicable to every city of the second or third class, and this whether or not the territory of the cities of such classes constitutes an entire school district. By sec. 40.51 outlying territory forming a part of the school district is attached to the city for school purposes. *State ex rel. Board of Education v. Racine,* 205 Wis. 389, 236 N. W. 553. Such, however, is not the provision with reference to cities of the fourth class. The plan provided by secs. 40.50 to 40.60 applies only to cities of the fourth class "whose territory constitutes an entire school district." If the territory of such a city does not constitute an entire school district, then the city school plan provided by secs. 40.50 to 40.60 does not apply. We think the court was in error in holding as it did in *State ex rel. Grelle v. Carroll, supra,* that the city school plan applies to every city of the fourth class the same as it does to every city of the second and third class, no matter whether the city of the fourth class constitutes an entire school district. We now hold that the city school plan applies only to cities of the fourth class whose territory constitutes an entire school district, and does not apply where the territory of the city of the fourth class constitutes but a portion of a school district.

The city of Lake Geneva is a fourth-class city. The petition in this case shows, and it is tacitly conceded by all concerned, that the school district of which the city forms a part comprises territory lying beyond the boundaries of the city. Consequently the city is not under the city school plan, and there is in existence there a separate municipal entity known as Geneva School District No. 1. It follows, therefore, that the relator in this case has standing as a separate municipal entity, and the case cannot go down because there is no relator here.

The further question arises, however, as to whether the school district has been properly authorized to maintain this action. Such authority as it has comes not from any school district meeting, but from a resolution of the school district board authorizing the prosecution of the action and the filing of the petition for the writ of *certiorari*. It is contended by the appellants that such action could be authorized only by the school district itself at a general or special school district meeting. This by virtue of sec. 40.04 (12), which empowers the annual school district meeting "to give direction and make provision for the prosecution or defense of any action or proceeding in which the district is interested." On the other hand, it is contended that the school district board has authority to initiate this action by virtue of sec. 40.16 (1), which provides as follows:

"Subject to the authority vested in the district meeting and to the authority and possession specifically given to other officers, the common school board shall have the possession, care, control and management of the property and affairs of the district."

In *School District No. 8 v. Arnold,* 21 Wis. *657, 665, it was held that this provision authorized the school board to maintain an action for trespass to recover damages done to the schoolhouse. It was said that the power to maintain such action was but an incident of the power vested in the board to control and manage the property of the district. This reasoning is not difficult to sustain. The proper control, management, and conservation of the property of the district might at times require speedy application for the process of courts, the benefit of which would be lost if the board could not take action in the absence of specific directions from a school district meeting.

However, it is not the property of the district that is involved here. It is something more intangible, and if we draw analogies from the holdings of this court with reference to the power of town boards to maintain actions in the

absence of specific directions from the town meeting, we must conclude that the decision in the *Arnold Case* approaches the limit of the authority that can be recognized as existing in the school district board to maintain actions in the absence of specific directions from the school district meeting.

For many years the town boards of this state have been authorized "To have charge of all the affairs of the town not by law committed to other officers." Sec. 60.29 (1). "To procure legal advice when needed in the conduct of town affairs and employ counsel for that purpose." Id. (3). "To have charge of all actions to which the town is a party." Id. (4). Sec. 60.18 authorizes the town meeting "To direct the institution and defense of all actions in which the town is a party or interested; to employ all necessary agents and attorneys for the prosecution or defense of the same, and to raise such sums of money for that purpose as they may deem proper." Under these statutory provisions it has been held that the town board, without the specific authorization of the town meeting, cannot maintain an action challenging the validity of an equalization assessment made upon the town (*State ex rel. Manitowoc v. County Clerk,* 59 Wis. 15, 16 N. W. 617); institute *mandamus* proceedings to compel the county board of supervisors to appropriate one-half of the cost of constructing a bridge and cause said sum to be levied upon the taxable property of the county (*State ex rel. Baraboo v. Sauk County,* 70 Wis. 485, 36 N. W. 396); to recover damages for the obstruction of a highway and to restrain further obstruction thereof (*Woodman v. Bohan,* 91 Wis. 36, 64 N. W. 323). In the latter case it is said: "Under this statute (sec. 60.18) this court has repeatedly held, in effect, that an action in which the town is a party or interested cannot be maintained without such authority from the electors, unless the authority to commence or prosecute the same is given by some other statute."

The power conferred upon town boards is "To have charge of all the affairs of the town not by law committed to other officers." The power and authority conferred upon school district boards by sec. 40.16 (1) is to "have the possession, care, control and management of the property and affairs of the district," subject to the authority vested in the district meeting, and other officers. We can see very little difference between the powers conferred upon town boards and the powers conferred upon school district boards. There would be no consistency between the cases above cited, denying the power of the town boards to maintain the actions there involved, and a decision holding that the school district board could maintain this action in the absence of authority conferred at a school district meeting. It was not within the power of the school board itself to authorize the commencement of this action.

Perhaps that is as far as we need go to dispose of this case. But the further question arises, and we think it should be determined, whether the school district itself has such an interest in the detachment of its territory as to authorize it to maintain this action. The present action does not involve the property of the district. If 'it involves anything in which the district has an interest, it is the "affairs of the district," and that raises the specific question of whether the boundaries of a district constitute any part of its affairs.

In *Montgomery v. Comm.* 91 Pa. St. 125, 133, it is said that "Affair is well defined to be, business; something to be transacted; matter; concern. Public affairs are matters relating to government."

In *Hankins v. Mayor,* 64 N. Y. 18, at p. 22, it is said: "County affairs are those relating to the county in its organic and corporate capacity, and included within 'its governmental or corporate powers." This statement is quoted approvingly in *Pettibone v. West Chicago Park Comm'rs,*

215 Ill. 304, at p. 332, 74 N. E. 387, at p. 397, and in *People ex rel. Breckon v. Election Comm'rs,* 221 Ill. 9, at p. 24, 77 N. E. 321. This declaration would seem to confine municipal affairs to the internal affairs of the municipality after the same has been organized and its boundaries fixed. It is only when the boundaries are fixed that the municipality comes into existence and is clothed with corporate powers. The municipality itself has nothing to say about its boundaries. That is a matter that is fixed or provided for by legislative action. When the legislature has provided for the boundaries of a municipality, that which may be termed the affairs of such municipality relates to those transactions of corporate interest within the boundaries so fixed.

In *People v. Los Angeles,* 154 Cal. 229, 97 Pac. 311, it was held that the annexation of territory to a city was not a "municipal affair," but a matter entirely outside of "municipal affairs."

In Nebraska it is well settled that the school district in its corporate capacity is without power to challenge an act of the county superintendent or other proper officers changing the boundaries of the school district. *Cowles v. School District No. 6,* 23 Neb. 655, 37 N. W. 493; *School District No. 1 v. Wheeler,* 25 Neb. 197, 41 N. W. 143; *School District No. 67 v. School District No. 24,* 55 Neb. 716, 76 N. W. 420. It is held in that state that all questions concerning a division of the district belong solely to the electors residing within the district, and that the school district as a corporation or quasi-corporation has been vested with neither power nor duty in the matter, nor has any district officer, board, or school meeting, and therefore the corporation cannot maintain an action challenging the legality of any official act changing the boundaries of a school district.

It is held in *School District No. 38 v. Rural High School District No. 6,* 116 Kan. 40, 225 Pac. 732, that the validity

of a rural school district established under the statute providing for the organization of rural high school districts, which included within its boundaries several ordinary school districts, may not be challenged by one of the districts so included, even though the latter may itself have been conducting a graded high school when the high school district was established. In that case it is said:

"While a school district is a public organization with authority to sue and be sued, it has not been vested with authority to challenge the validity of another public municipality or corporation. That function is vested in the state, to be prosecuted only by its authorized representatives. In this respect the school district is in the attitude of a private party and has been given no right to intervene in behalf of the state or to challenge the validity of another school district in an injunction proceeding."

These authorities are in exact accord with the holdings of this court to the effect that a town out of which a village is carved has no power or authority to challenge the validity of the proceedings establishing the village. *In re Village of Mosinee,* 177 Wis. 74, 187 N. W. 688; *In re Village of Chenequa,* 197 Wis. 163, 221 N. W. 856.

If the boundaries of a municipality were to be construed as involving the affairs of the municipality, it would give rise to insuperable difficulties under our constitution. As a single illustration: Sec. 23, art. IV, Const., provides that "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." It is well known that the counties themselves may be created and their boundaries fixed by special act. If the boundaries of the county be an affair of county government, the constitutional provision referred to quite plainly prevents their formation by special act. It must be true that the boundaries of a municipality are no part of the affairs of that municipality, and that a proper concep-

tion limits municipal affairs to those matters "relating to the municipality in its organic and corporate capacity and included within its governmental or corporate powers." The kind and character of a schoolhouse, its equipment, qualifications of its teachers, and the duration of its terms of school, are all affairs of the school district. They, however, are quite independent and distinct from its corporate boundaries and arise only after the district has been established and its corporate boundaries fixed.

In this state it has been consistently held that the legality of changes in the boundaries of school districts may be raised by those who are patrons of the school, resident within the territory affected. *State ex rel. Foster v. Graham,* 60 Wis. 395, 19 N. W. 359; *State ex rel. Graff v. Steele,* 106 Wis. 475, 82 N. W. 295; *State ex rel. Bidgood v. Clifton,* 113 Wis. 107, 88 N. W. 1019; *State ex rel. Hebert v. Carlson,* 150 Wis. 584, 137 N. W. 746. Those actions were not taxpayers' actions, strictly speaking. They were not maintained on behalf of the municipality, nor were they maintained because the municipality failed to act. They were permitted by virtue of the interest of the individual in the educational facilities which he had a right to enjoy.

For the reasons herein indicated, we conclude that the motion to supersede the writ should have been granted.

*By the Court.*—Order reversed, and cause remanded with instructions to enter an order superseding the writ of *certiorari.*

A motion for a rehearing was denied, with $25 costs, on February 7, 1933.