HARDWARE MUTUAL CASUALTY COMPANY, Respondent, v. HARTFORD ACCIDENT & INDEMNITY COMPANY and another, Appellants.

*February 2—March 3, 1959.*

For the appellants there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay for the Hartford Accident & Indemnity Company, and *Norman L. Wanta,* city attorney of Stevens Point, and oral argument by *Mr. Fred N. Trowbridge* and *Mr. Wanta.*

For the respondent there was a brief by *Atwell & Atwell* of Stevens Point, and *W. L. Jackman* of Madison, and oral argument by *Mr. Jackman.*

HALLOWS, J. The only question that need be discussed is that of the coverage afforded by Hardware Mutual's policy No. 504153. The accident arose on the premises of the high school, on a platform adjoining the boiler room of the school building. Hardware Mutual contends that its policy did not cover the premises or the operations of the city schools, although concededly it covered various other city activities and employees.

The provisions of the Hardware Mutual Policy relied upon by appellants are included in the following excerpts from the policy:

"Item 1   Name   of   Insured   City   of   Stevens   Point
                     Municipality 1212 . . .
The business of the named insured is Municipality. . . .

Item 5    The location of the premises insured under Division 1 is City, Stevens Point, Wisconsin 4800.
. . .
The part occupied by the named insured is Municipality. ·. . .

### Division 1.    Operations and Premises
#### (Manufacturers' and Contractors')

| Classification of Business Operations | Manual Code Number | Estimated Total Re- muneration | Rate per $100 of Re- muneration | Estimated Premiums |
|---|---|---|---|---|
| **Fire & Police Commission** | | | | |
| Policeman | 3445 | 62,000 | .355 | 220.10 |
| Fireman | 3445 | 54,000 | .355 | 191.70 |
| **City of Stevens Point** | | | | |
| Municipal, township, county or state employees–NOC (workmen, mechanics, or others engaged in manual labor or supervisors of construction work to be separately rated) | 2475 | 87,700 | .061 | 53.50 |
| Street or road construction or reconstruction . . . | 3450 | 16,000 | .537 | 85.92 |
| Garbage, ashes, or refuse collecting. | 2482 | 25,500 | .051 | 13.01 |
| Street cleaning . . . . | 2482 | 21,400 | .051 | 10.91 |
| Clerical office employees– NOC | 3485 | 20,000 | .005 | 1.00 |
| Concrete construction | 6041 | if any | .101 | |
| Painting, decorating, or paper hanging–NOC . . . | 3429 | if any | .018 | |
| Sewer cleaning | 9407 | 5,500 | .192 | 10.56 |
| Street or road paving or repaving, surfacing or re- surfacing or scraping . . . | 5506 | if any | .739 | |

### "Insuring Agreements

"Coverage A. Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sick-

ness, or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined."

"DEFINITION OF HAZARDS

"Division 1. Operations and Premises (Manufacturers' and Contractors'). (a) All operations during the policy period which are necessary or incidental to the ownership, maintenance, or use of the premises, and (b) the ownership, maintenance, or use of the premises."

The policy contained a further provision as follows:

"The insurance afforded is only with respect to such and so many of the coverages and divisions as are indicated by specific premium charge or charges in the schedule on the reverse side." (Referring to the schedule printed above.)

Therefore, by express provision, the policy covered no activity not included in that schedule.

Appellants (the city and the Hartford Company) contend that the entire city constituted the premises covered by the policy, and that the injuries arose out of the "hazards hereinafter defined," namely, "operations necessary or incidental to the ownership, maintenance, or use of the premises." They further contend that since the schools belong to and are operated by the city, of which the school board is a mere agency, and the school janitors are city employees (citing *State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553), the allegedly negligent school janitors were "Municipal . . . employees–NOC" or else were within the category of "Garbage, ashes, or refuse collecting" within the schedule of covered activities, and that therefore the Hardware policy clearly and without ambiguity covered the risk in question.

It is clear that the operations which gave rise to the accident were not covered by the specification "Garbage, ashes, or refuse collecting." The school janitors, when they piled the ashes on the platform next to the boiler room, where

young Haase stepped into them, were not engaged in collecting anything. The janitors deposited the ashes for someone else to collect and remove. In the context of the policy the word "collecting" does not mean the assembling of refuse near the point of origin to be picked up and removed by others, but rather relates to the operation of removing, hauling away, and disposing of the refuse thus assembled.

The only covered classification specified in the policy which could possibly include the creation and maintenance of the ash pile by the school janitors is that described as follows:

"Municipal . . . employees–NOC (workmen, mechanics, or others engaged in manual labor or supervisors of construction work to be separately rated) 2475."

Appellants contend this description clearly includes the school janitors, since they are municipal employees, and there is no room for any other interpretation or for recourse to extrinsic evidence of intent. We cannot agree.

The quoted words themselves raise a serious question whether they apply to the school janitors. If it is conceded such janitors are municipal employees, then are they "Municipal . . . employees–NOC," *i.e.,* not otherwise classified? Since the quoted provision expressly states that workmen engaged in manual labor are to be separately rated, are janitors, whose labor is mainly manual, to be included in the particular rating?

The policy classification "Municipal . . . employees–NOC" on which the appellants rely contains a patent ambiguity, for the solution of which recourse may be had to extrinsic evidence of the attendant facts constituting the setting of the insurance contract. The language of the policy will bear more than one construction, and we may look at the surrounding circumstances, not to contradict the plain terms of the contract, but to ascertain which of more than one

possible meaning must have been intended. It is unnecessary to invoke the rule relating to so-called latent ambiguities, discussed in *Georgiades v. Glickman* (1956), 272 Wis. 257, 264, 75 N. W. (2d) 573; *Rood v. Merchants Ins. Co.* (1942), 240 Wis. 329, 336, 3 N. W. (2d) 353.

Facts appearing in the affidavit and adverse examinations filed in support of the motion for summary judgment and not contradicted, strongly support the trial court's conclusion that Hardware Mutual's policy was not intended to include the risk which gave rise to the Haase accident. Since the terms of the policy readily permit an interpretation excluding coverage, that interpretation must be adopted.

The city had three liability policies. The Hartford policy, which specifically covered the schools; the Hardware Mutual policy No. 537192, which covered specific property of the city, other than the schools, and the Hardware Mutual policy No. 504153 now in question. This policy described no specific property and described a number of activities having the common characteristic of being ambulatory and not necessarily performed at any particular location. In actual practice, the school board operated separately from the rest of the city except with respect to its financing. School janitors were employed by the school board and controlled by it. Insurance on school property and school activities was arranged for by the school officials. Arrangements for the Hardware Mutual policies were made by the city comptroller. He did not intend to insure the schools. Neither the city authorities nor the school authorities, although they knew of the accident the day after it happened, reported it to Hardware Mutual for almost two years. It was immediately reported to Hartford.

More significant is the fact that although the premium paid for the Hardware Mutual policies was based on the pay roll for each covered activity, no part of the school pay

roll was reported to Hardware Mutual. Therefore no premium was paid for coverage of school activities.

These facts evidence the practical construction of the policy by the parties, and show quite plainly that neither party intended the schools to be covered by Hardware Mutual. A construction of the policy as covering the schools would result in discrimination forbidden by sec. 204.52 (1), Stats., 25 W. S. A., p. 385, for it would provide the city with free insurance of its schools. A construction leading to such a result should be avoided where, as here, it is not compelled by unequivocal language.

The conclusion that the policy did not cover the school operations finds additional support in the reference in the item specifying "Municipal . . . employees–NOC" to manual code No. 2475. The reference is to the rating manual of the Mutual Casualty Insurance Rating Bureau, adopted by Hardware Mutual and filed with the commissioner of insurance pursuant to sec. 204.40, Stats., 25 W. S. A., p. 371. The manual explains code No. 2475 as follows:

"This classification includes inspectors of the board of health, electrical inspectors, building inspectors, employees engaged in laboratory work and *similar occupations.*"

This indicates that school janitors are not included in the classification, since their work is in no way similar to that of inspectors or laboratory workers.

While appellants object to the use of the rating manual as an aid to interpretation of the policy we think it clearly proper. As pointed out above, the policy provision itself is susceptible of more than one interpretation. It refers in express terms to the code number of the manual, which explains to some extent the classification "Municipal . . . employees–NOC." The manual may therefore be referred to for clarification of the cryptic expression appearing in the policy.

Appellants argue, finally, that where the interpretation of a contract depends on extrinsic evidence, the question is one of fact rather than law and therefore summary judgment must be denied. If the extrinsic facts were in dispute in any material particular, the point would be well taken, but there is no dispute in the record on this motion for summary judgment of the facts which make it sufficiently clear that the policy was not intended to cover the operations of the school janitors on the school premises. Therefore there was no material issue of fact to be tried and summary judgment was properly granted.

Since the Hardware Mutual policy did not cover the risk out of which the accident arose it is unnecessary to consider the other questions argued by the parties.

*By the Court.*—Judgment affirmed.