CARTWRIGHT, Respondent, v. SHARPE and others, Appellants.*

*No. 28. Argued October 3, 1968.—Decided November 1, 1968.*
(Also reported in 162 N. W. 2d 5.)

* Motion for rehearing denied, without costs, on January 7, 1969.

For the appellants there were briefs by *Kenneth E. Worthing* of Fond du Lac, special counsel, and *John C. Murphy,* Fond du Lac city attorney, and oral argument by *Mr. Worthing.*

For the respondent there was a brief by *Colwin & Buslee* of Fond du Lac, and oral argument by *Raymond R. Colwin.*

BEILFUSS, J. Prior to 1967 it was not constitutionally permissible, in Wisconsin, for a public school district to provide transportation for children attending parochial or private schools,[1] although it was mandatory in some instances and permissible in others to provide transportation for students attending public schools.

In 1967, by virtue of the mandate of a statewide referendum, the Wisconsin Constitution was amended to provide:

Art. I, sec. 23. **"Transportation of school children.** Nothing in this constitution shall prohibit the legislature from providing for the safety and welfare of children by providing for the transportation of children to and from any parochial or private school or institution of learning."

Pursuant to authority provided by the constitutional amendment, the legislature did elect to provide for the transportation of children to any parochial or private school by amending the existing statutes for public school transportation so as to provide for transportation for students attending private or parochial schools and public schools upon a reasonably uniform basis.

This enabling legislation was created by chs. 68 and 313, Laws of 1967.[2] Sec. 1 of ch. 68 provides:

---

[1] See *State ex rel. Reynolds v. Nusbaum* (1962), 17 Wis. 2d 148, 115 N. W. 2d 761.

[2] Chapter 313 became necessary to reconcile other acts of the 1967 legislature, relating to schools, with the revision of the school laws as accomplished by ch. 92.

"PURPOSE. The intent of this act is to provide for the safety and welfare of children by providing for their transportation to and from public and private schools."

The controlling statutes as they now exist became effective in January, 1968, and are as follows:

"121.54 (1). CITY OPTION. Subsections (2) and (6) and s. 121.57 do not apply to pupils who reside in cities, except that where an annual or special meeting of a common school district or a union high school district, or the school board of a city school district or unified school district determines to provide transportation for such pupils, state aid shall be paid in accordance with s. 121.58 and there shall be reasonable uniformity in the transportation furnished pupils who reside in cities as between pupils attending public and private schools."

"121.54 (2) GENERAL TRANSPORTATION. (a) Except as provided in sub. (1), every school board shall provide transportation to and from public school for all pupils who reside in the school district 2 miles or more from the nearest public school they are entitled to attend.

"(b) 1. Except as provided in sub. (1), the school board of each district shall provide transportation to and from the school he attends for each pupil residing in the school district who attends any elementary grade, including kindergarten, or high school grade, comparable to any grade offered by such school district, at a private school located 2 miles or more from his residence, if such private school is the nearest available private school which the pupil may reasonably choose to attend and is situated within the school district. . . ."

It is the position of the respondent-petitioner that sec. 121.54 (2) (b) 1, Stats., requires that the school board provide transportation for his children to St. Mary's Springs Academy because they reside more than two miles from the school and it is the nearest parochial school that they may reasonably choose to attend. It is the contention of the appellant school board that by virtue of sec. 121.54 (1) it is optional with the school board whether students who reside in the city and more than two miles from school will be transported, and that

if transportation is furnished to the petitioner's children transportation must be furnished to all other children, public or parochial, who reside in the city and are more than two miles from their school, and to do otherwise would violate the statute in that transportation would not be reasonably uniform as to pupils of public and private schools.

Before discussing the principal issue, namely the construction of the statutes in question, it may be well to define the scope of the writ of mandamus. In *Menzl v. Milwaukee* (1966), 32 Wis. 2d 266, 145 N. W. 2d 198, this court stated that mandamus was a discretionary writ and added, at pages 275, 276:

" 'Mandamus is a summary, drastic, and extraordinary writ issued in the sound discretion of the court. Although classed as a legal remedy, mandamus is equitable in its nature and its issuance is generally controlled by equitable principles. The rights of the public and of third persons may be considered.'

" 'The [trial] court has discretion as to the issuing of a writ of *mandamus* directed to a public officer. The order of the court will not be reversed except for abuse of such discretion.' *State ex rel. New Strand Theatre Co. v. Common Council* (1930), 201 Wis. 423, 425, 230 N. W. 60.

"Moreover, it is an abuse of discretion for a court to compel action through mandamus when the officer's duty is not clear and unequivocal and requires the exercise of the officer's discretion. *Wisconsin Pharmaceutical Asso. v. Lee* (1953), 264 Wis. 325, 58 N. W. (2d) 700; *State ex rel. Drew v. Shaughnessy* (1933), 212 Wis. 322, 249 N. W. 522, Anno. 90 A. L. R. 368; *State ex rel. Adams County State Bank v. Kurth* (1939), 233 Wis. 60, 288 N. W. 810. But it is equally well settled that a writ of mandamus will issue to enforce the performance of plain imperative duties of a ministerial character imposed on executive agencies. *State ex rel. West Allis v. Zawerschnik* (1957), 275 Wis. 204, 207, 81 N. W. (2d) 542; *State ex rel. Krause v. Jones* (1928), 196 Wis. 464, 220 N. W. 373. Furthermore, it is the proper remedy to compel public officers to perform their clearly prescribed statutory duty. *State ex rel. Martin v. Zimmerman*

(1939), 233 Wis. 16, 288 N. W. 454; *State ex rel. Ingold v. Mayor* (1919), 170 Wis. 133, 174 N. W. 471."

Mandamus is not the proper remedy to control the acts of governmental bodies when acting within the scope of their legal powers. *Beres v. New Berlin* (1967), 34 Wis. 2d 229, 148 N. W. 2d 653. Nor can mandamus be used to compel specific action by a municipal body or officer where such action is discretionary. *State ex rel. Comstock v. Joint School Dist.* (1886), 65 Wis. 631, 27 N. W. 829.

The basic issue is whether under the law and the facts of this case is it a mandatory obligation of the school district to provide transportation of the in-city students (all of whom live more than two miles from the school) to St. Mary's Springs Academy. If the determination by the school board is discretionary rather than mandatory it is clear the petitioner cannot obtain the desired relief by means of mandamus.

The respondent-petitioner relies upon sec. 121.54 (2) (b) 1, Stats., which provides the more than two-mile standard for children attending private schools and the overall safety and welfare of children provision of the intent of the legislative act (ch. 68, Laws of 1967), and the constitutional amendment (art. I, sec. 23, Wis. Const.).

The appellant school board asserts that sec. 121.54 (2) (b) 1, Stats., by its own specific terms, is subject to sec. 121.54 (1), which makes it optional with the school board as to whether children who reside in the city will be provided transportation and if transportation is provided it must be reasonably uniform as to all children who reside in the city, both as to public and private students.

From a literal reading of these statutes (set forth above), there is no question from language which is plain and unambiguous that the "over two mile" provision for

mandatory transportation does not "apply to pupils who reside in cities" except where the school board "determines" to provide such transportation.

Both the appellant school board and respondent-petitioner cite authorities in support of their construction of the statute. The school board cites the familiar rule that when a statute is plain and unambiguous no interpretation is necessary; and that a court may not review matters outside the statutory language to determine its meaning,[3] nor can the court add language to a statute to obtain a desired result—such is prohibited judicial legislation.

The petitioner-respondent cites authorities to the effect that even though the language of a statute may be plain and unambiguous, if to give the statute its apparent meaning would result in an absurdity or obscure the legislative purpose the court may look to the history of the legislation to find the real intent of the legislature and may substitute the right word for one clearly wrong if need be.[4]

For many years, the "over two miles" and city option statutes have existed in almost identical form as they do today. The important change provided by the constitutional amendment and the enabling legislative acts was to provide that where transportation is furnished, either mandatory or permissive, it must be on a reasonably uniform basis to children attending either public or private schools.

It is true that the safety and welfare of the children were the laudable motivating factors of the transporta-

[3] *Weather-Tite Co. v. Lepper* (1964), 25 Wis. 2d 70, 130 N. W. 2d 198; *Miller v. Wadkins* (1966), 31 Wis. 2d 281, 142 N. W. 2d 855; *Beck v. Hamann* (1953), 263 Wis. 131, 56 N. W. 2d 837; *State ex rel. Badtke v. School Board* (1957), 1 Wis. 2d 208, 83 N. W. 2d 724.

[4] *Pfingsten v. Pfingsten* (1916), 164 Wis. 308, 159 N. W. 921.

tion statutes. There is no reason to suspect that these factors were not relied upon by the legislature before the enactment of the constitutional amendment and the enabling legislation of the present statutes. What the constitutional amendment and the enabling legislation accomplished was to provide that the same consideration of safety and welfare should apply to public and private students alike.

It cannot be said that the school board under its authority as provided in sec. 121.54 (1), Stats., discriminated against students of either private or public schools. The school board determined not to provide transportation to any students (public or private) who resided in the city of Fond du Lac and whose schools were more than two miles from their residence.

The safety and welfare motivations have express legislative limitations. There is no mandatory provision for transporting any child (public or private), regardless of his residence, who lives less than two miles from his school (except statutory provisions for handicapped children or hazardous routes). Certainly a child who lives one and nine-tenths miles from his school can be subjected to substantially the same safety and welfare hazards as one who lives two miles from his school. The legislature drew the line at two miles and could reasonably do so.

The answer to the problem before us is a determination as to whether the classifications provided by the legislature are reasonable. If the classifications are unreasonable the legislation is unconstitutional.[5] Stated conversely, when differences reasonably suggest different treatment and when all persons in a class are treated alike, the classifications will not be struck down.[6]

[5] The constitutionality of the statute is not specifically challenged but both parties refer to it in their briefs.

[6] *State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 139 N. W. 2d 585.

The statutory sections are not ambiguous. They clearly create four major classifications [7] in every school district: those who live more than two miles from school; those who reside in cities; those who do not; and those who reside in the district but not in cities and attend schools which are located not more than five miles outside the district. The petitioner would have the court create a fifth classification, namely—students who reside in the city but attend school outside the city. To do so would require the court to impose an exception upon a legislative exception. The statutes clearly state that transportation shall be provided for those who live more than two miles from their school except those who reside in cities. To add an exception to the exception is to indulge in judicial legislation which we refrain to do. To be sure there may be differences in method, mode, ease and safety of travel within and without a city. All present some hazards. In a given situation, travel may be more hazardous in the city than outside the city and vice versa. As stated by counsel for the appellant school board, inequities will result in the extremes of any classification unless and until all students are transported all the way. In *Union Free High School Dist. v. Union Free High School Dist.* (1934), 216 Wis. 102, 108, 256 N. W. 788, where a classification was based upon the distance from a school, the court stated: "In every classification there are always cases just within or just without the border lines."

The majority of the court is of the opinion that the classification of students who reside within a city more than two miles from their school is a reasonable classification that can and should be applied to all members of the class equally. The school board exercised its discretion in a manner provided for by a valid statute and the writ of mandamus should be quashed. If the relief re-

---

[7] We are not at this point concerned with the handicapped and extra hazardous route statutes.

quested by the petitioner-respondent is to be authorized it should be done by the legislature considering the problem as it affects the state as a whole and not by the court in one limited factual situation.

A further reason appears why the judgment of the trial court cannot stand. The judgment directs the issuance of a writ which would compel the school board to provide transportation for a specified group of students who reside in the city and more than two miles from their school. This would mean that 392 students in the legislative class would be transported and 400 would not. Under the terms of the statute, if transportation is to be provided for students who reside in the city and more than two miles from their school, it must be provided to all students in that class with reasonable uniformity whether the students attend a public or private school.

The appellant school board raises another issue that warrants the court's attention. At the hearing on the petition for mandamus Mr. Heinzen, a member of the assembly, was called to testify. As a member of the legislature he was serving his fourth consecutive term and was vice-chairman of the education committee of the assembly at the time of the introduction and passage of the enabling legislation. He testified over the objection of the school board as to the intention of the legislature insofar as it applied to the facts at hand.

We deem it was error to permit the legislator to testify as to the intention of the legislature.

"When a statute is plain and unambiguous interpretation is unnecessary, and intentions cannot be imputed to the legislature except those to be gathered from the terms of the law." *Estate of Ries* (1951), 259 Wis. 453, 459, 49 N. W. 2d 483, 50 N. W. 2d 397; *State ex rel. United States Fidelity & Guaranty Co. v. Smith* (1924), 184 Wis. 309, 316, 199 N. W. 954.

Members of the legislature have no more right to construe one of its enactments retrospectively than has any

other private person. *Northern Trust Co. v. Snyder* (1902), 113 Wis. 516, 89 N. W. 460.

Respondent cites *Bendorf v. Darlington* (1966), 31 Wis. 2d 570, 143 N. W. 2d 449 and *Nekoosa-Edwards Paper Co. v. Public Service Comm.* (1959), 8 Wis. 2d 582, 99 N. W. 2d 821, to the contrary. Those cases, however, go to documents that are part of the legislative history and public records, or learned articles by the draftsman which attempt to explain the purpose of the statute and are distinguishable from the situation where a legislator, in retrospect, attempts to incorporate into a statute a specific fact situation not fairly raised by the language of the act.

The trial court did state in his memorandum opinion that he did not rely on the legislator's testimony in coming to his conclusion. The error, therefore, is harmless.

The respondent-petitioner has filed a motion to review. In the trial court the respondent took the position that inasmuch as the school board had recommended an amount sufficient to provide for transportation of in-city students in its proposed budget it was bound by that determination and could not at a later date delete the amount necessary for this transportation. The trial court did not accept this argument and thus the respondent's motion to review.

As set forth in the statement of facts, the appropriating authority fixed the amount of the budget as it is authorized to do. In doing so it reduced the overall budget for the school district by the amount of $200,000 without specific designation as to any item. Faced with this situation the school board by necessity had to eliminate or alter some of the items of the proposed budget.

The cost of transportation for the in-city students was estimated to be $48,200. The resolutions of the school board in connection with contract negotiations for this transportation were conditioned upon funds being available. Some items of a school budget obviously cannot be

deleted or reduced. Transportation of in-city students was one item that was permissible but not required. The school board had to exercise its discretion as to what items were to be deleted or reduced.[8] It cannot be said the school board acted in an arbitrary or unreasonable manner and in doing so it treated the students of the public and private schools in a uniform manner.

*By the Court.*—Judgment directing the issuance of the writ of mandamus is reversed.

HALLOWS, C. J. (*dissenting*). I dissented in *State ex rel. Reynolds v. Nusbaum* (1962), 17 Wis. 2d 148, 115 N. W. 2d 761, because I believed the safety and welfare of schoolchildren were proper constitutional purposes of a school bus law. Following that decision the people of Wisconsin so provided and the law under question resulted. I must now dissent to the majority opinion on the very basic ground that the exception provided in sec. 121.54 (1), Stats., to the school bus law is unconstitutional because the exception allows a school board to discriminate in matters of safety and welfare between children who reside in the city and those who reside in the rural area of the same school district. The result is to deny the equal protection of the law to city schoolchildren.

The majority of the court considers the statute allowing the bussing of children to public and private schools to be clear and therefore not in any need of construction. It also considers its reading of the statute as not resulting in an absurd result even though children living near St. Mary's Springs Academy are bussed to the high school in the city of Fond du Lac while children living near the high school in the city of Fond du Lac are not bussed to St. Mary's Springs Academy.

In my opinion the exclusion in sec. 121.54 (1), Stats., providing that equal transportation need not apply to

---

[8] *See State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553; *Board of Education v. Racine* (1931), 205 Wis. 489, 238 N. W. 413.

pupils who reside in cities creates an unreasonable classification and bears no reasonable relationship to the purpose of the law. The purpose and object of the school bus law is to promote and provide for the safety and welfare of children by providing transportation. I see no valid distinction between city and rural children in respect to their safety and welfare. It is just as healthy or unhealthy to walk two miles in the city as it is in the country and I believe the traffic hazards are greater in the city than in the country, at least the traffic statistics and insurance rates so indicate. If the law required the bussing of city children and excepted rural children, the denial of the equal protection of the law might be more apparent to some people. Legislative classification in order not to violate equal protection of the laws must be "germane to the purposes of the law, is not based upon existing circumstances only, applies equally to members of a class, and the character of one class is so different from another class as reasonably to suggest the necessity or propriety, having regard for the public good, of substantially different legislative treatment." *Union Free High School Dist. v. Union Free High School Dist.* (1934), 216 Wis. 102, 107, 256 N. W. 788, as quoted in *State ex rel. Harvey v. Morgan* (1966), 30 Wis. 2d 1, 139 N. W. 2d 585.

This is no fringe or borderline case. Some 392 schoolchildren reside in the city of Fond du Lac more than two miles from St. Mary's Springs Academy; these children are not transported by bus to the academy by the school district although a bus goes out in that direction empty in the morning to pick up children living in the area of St. Mary's Springs Academy and bring them to the Fond du Lac high school. Likewise, in the afternoon the Fond du Lac residents who attended St. Mary's Springs Academy can walk back to the city while a bus returns empty after taking home the rural area students. The constitution should go in all directions at all hours of the day.

I do not believe the exclusion can be saved by the construction suggested by other members of the court in their minority opinion. Their construction as pointed out by the majority takes care of the city children going to a high school outside of the city and thus equalizes them with children living in the rural areas who attend a high school in the city, but such construction completely ignores city children attending a city high school. These children, too, are entitled to bus service on the same terms and conditions applicable to other children living in the school district. The exception cannot be partially saved. It is unconstitutional in its totality because it does not treat all schoolchildren in the same school district equally.

The majority argues but not on constitutional grounds that the mandamus action does not go far enough because it only requires the school board to bus children to St. Mary's Springs Academy and does not require the school board to provide bus service to children residing in the city who wish to go to a city school and live more than two miles therefrom. I agree. All students living in the district, whether they be in or out of the city, should be treated alike. All should be bussed for their safety and welfare. Their health and their safety are of the same concern of the school board, their parents pay the same school taxes, and the service should be the same. I would affirm.

HANLEY, J. (*dissenting*). The interpretation given sec. 121.54 (1), Stats., by the majority denies equal protection [1] of the law to certain groups of schoolchildren.

---

[1] "An express guaranty of equal protection of the laws is found only in the Fourteenth amendment of the constitution of the United States but since early days it has been read into the Wisconsin constitution. . . ." *State ex rel. Steeps v. Hanson* (1957), 274 Wis. 544, 549, 80 N. W. 2d 812, and cases cited therein.

"Subsections (2) and (6) and s. 121.57 do not apply to pupils who reside in cities . . . ." Sec. 121.54 (1), Stats.

The majority finds that the classification "pupils who reside in cities" is a reasonable classification. I cannot agree. The classification not only fails to meet the test laid down by this court in *Union Free High School Dist. v. Union Free High School Dist.* (1934), 216 Wis. 102, 256 N. W. 788; it also leads to an absurd situation.

In the *Union Free High School Dist. Case, supra,* at page 107, this court stated:

"It is generally held that the legislature, in enacting laws, may resort to classification without violating constitutional provisions when a classification is based upon substantial differences or distinctions between classes, is germane to the purposes of the law, is not based upon existing circumstances only, applies equally to members of a class, and the character of one class is so different from another class as reasonably to suggest the necessity or propriety, having regard for the public good, of substantially different legislative treatment. . . ."

The classification employed here is neither "germane" to the purpose of the law, nor is the "public good" served by the distinction.

The purpose of the law is obviously to provide for the safety and welfare of schoolchildren.[2] The legislation makes it mandatory to transport pupils who live in the country to their city schools if the distance between home and school is greater than two miles. However, it is not mandatory to transport pupils who live in cities and attend rural schools which are farther than two miles from their homes. Thus the safety and welfare of rural children is entitled to protection. But the safety and welfare of city children, who travel the very same high-

---

[2] The purpose of the legislation is obvious from its provisions. It is also detailed in sec. (1) of the enabling legislation:
"PURPOSE. The intent of this act is to provide for the safety and welfare of children by providing for their transportation to and from public and private schools." Ch. 68, Laws of 1967.

way, for the very same distance, at approximately the very same time (but in different directions), does not require the very same protection. Bearing in mind the purpose of the legislation, such a conclusion is obviously absurd in theory.

As applied to the facts of this case, the conclusion is equally absurd. St. Mary's Springs Academy is located more than two miles from the city of Fond du Lac. The St. Mary's pupils who live in Fond du Lac must find their own way to school. However, certain children who live directly across the highway from St. Mary's, but who attend school in Fond du Lac, are transported to their classes. Both groups of students use the same highway and encounter the same hazards. One group is protected and the other group is not. For this reason, if the legislation is read literally, I must hold the attempted classification arbitrary and unreasonable and a denial of equal protection.

However, the statute is open to an interpretation which would render it constitutionally valid.

" 'A statute may be plain and unambiguous in its letter, and yet, giving it the meaning thus suggested, it may be so unreasonable or absurd as to involve the legislative purpose in obscurity. *Rice v. Ashland County,* 108 Wis. 189, 84 N. W. 189. In such case, or when obscurity otherwise exists, the court may look to the history of the statute, to all the circumstances intended to be dealt with, to the evils to be remedied, to its reason and spirit, to every part of the enactment, and may reject words, or read words in place which seem to be there by necessary or reasonable inference, and substitute the right word for one clearly wrong, and so find the real legislative intent, though it be out of harmony with, or even contradict, the letter of the enactment. . . .' " *Connell v. Luck* (1953), 264 Wis. 282, 284, 285, 58 N. W. 2d 633, quoting from *Pfingsten v. Pfingsten* (1916), 164 Wis. 308, 313, 159 N. W. 921.

To this writer the intent of the legislature in enacting sec. 121.54 (1), Stats., was to provide an exception for

pupils who reside in a city and attend city schools. This group is not exposed to rural highway hazards. They walk on city sidewalks and generally have public transportation available. Thus, I read sec. 121.54 (1) as follows:

"Subsections (2) and (6) and s. 121.57 do not apply to pupils who reside in cities" *and go to school in cities.*

This interpretation would meet the test for classifications set down in the *Union Free High School Dist. Case, supra,* and the constitutionality of the legislation would be preserved. It is a firmly established rule of this court that:

". . . if a law is open to two constructions, that construction which will save it from condemnation will be adopted in preference to one which renders it unconstitutional. . . . The . . . rule applies even though a different construction would be more obvious or natural. . . . " *Petition of Breidenbach* (1934), 214 Wis. 54, 62, 252 N. W. 366.

Besides saving the constitutionality of the legislation there is ample evidence that the legislature intended the statute to furnish the result which is reached here.

The original law limiting the transportation of schoolchildren who reside in cities was enacted in 1927 as sec. 40.34 of the Wisconsin statutes. Sub. (6) then provided:

"This section does not apply to children who reside in cities." A comparable provision has been in all the school transportation statutes since that time. Each city, however, in the public school system *is a separate school district* [3] and, consequently, children who reside in cities

---

[3] When the limitation on transporting city students was adopted in 1927, sec. 40.51, Stats., was also amended:

"Each city, affected by this plan, is a single and separate school district . . . ."

Our present sec. 120.41 (as created by Laws of 1967, ch. 92, sec. 17, provides:

". . . Every city operating a school system under this subchapter is a single and separate school district . . . ."

would go to school in the same city. The legislature did not say "pupils who reside in cities and go to school in that city" because it was unnecessary. If you lived in the city, you went to school in that city.

When the legislature authorized the transportation of private school pupils,[4] however, the situation changed somewhat. Private schools were not subject to the geographical limitations of school districts and they were often located outside the city limits. Nonetheless, the state is just as concerned with the safety and welfare of these children as it is with any other children. The interpretation the majority gives to sec. 121.54 (1), Stats., denies the protection of the school transportation legislation to some pupils, while it protects other pupils from the identical circumstances.

I respectfully dissent and would affirm the judgment of the circuit court. I am authorized to state that Mr. Justice ROBERT W. HANSEN joins this dissent.