PARK BUILDING CORPORATION, Appellant, v. INDUSTRIAL
COMMISSION, Respondent.

*December 2, 1959—January 5, 1960.*

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland* and *Kenney & Hays,* attorneys, and *Victor M. Harding* and *Robert V. Abendroth* of counsel, all of Milwaukee, and oral argument by *Mr. Victor M. Harding* and *Mr. Abendroth.*

For the respondent Industrial Commission the cause was argued by *LeRoy L. Dalton,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

CURRIE, J.   The issues on this appeal are as follows:

(1) Was the petitioner put in the position of being faced with two conflicting orders?

(2) Is the Industrial Commission now estopped from enforcing Order 5711 of the 1918 state building code as applied to the petitioner's building?

(3) Was it necessary that the state building code be filed with the city clerk of Milwaukee as a condition precedent to the code being effective in such city?

(4) Was the commission faced with a contested case which required it to hold a hearing on petitioner's petition

and to accompany its decision with findings of fact and conclusions of law?

(5) Will the enforcement of Order 5711 of the 1918 state building code deprive petitioner of its· property without due process of law?

### *Was Petitioner Faced with Conflicting Orders?*

Sec. 101.15 (1), Stats., authorizes any owner of property affected by any general order of the Industrial Commission to petition the commission for a hearing to determine the reasonableness of the order. Sec. 101.15 (4) provides that, if the commission finds upon investigation that the order covered by the petition is unjust or unreasonable, it "shall substitute therefor such other order as shall be just and reasonable."

Sec. 101.16 (2), Stats., authorizes any person affected by a local safety order in conflict with an order of the commission to petition the commission for relief. Sec. 101.16 (3) provides that, "If upon such investigation it shall be found that the local order appealed from is unreasonable and in conflict with the order of the commission, the commission may modify its order and shall substitute for the local order appealed from such order as shall be reasonable and legal in the premises, and thereafter the said local order shall, in such particulars, be void and of no effect."

The petitioner's original petition to the commission was grounded upon sec. 101.15, Stats. However, by reason of the later amendment thereof, which occurred after the circuit court review proceeding had been instituted, it is the position of the petitioner that the petition was broadened so as to request relief under sec. 101.16 also. In order to have sec. 101.16 applicable to the instant fact situation, it is essential that there be a local order which conflicts with

an order of the commission. The petitioner attempts to achieve this essential requirement by terming the issuance of the 1919 building permit as an "order of the commission" and the enforcement order of April 29, 1957, as a "local order."

The theory under which the petitioner contends that the 1919 building permit constitutes an order of the commission is this: Sec. 2394–52 (13), Stats. 1917 (now sec. 101.10 (13)),[1] authorized the commission to delegate its function of approving plans for buildings, such as petitioner's, to the Milwaukee building inspector. The 1918 state building code also provided, "As the building code is not a statute but an administrative order of the commission, it may be so interpreted, modified, or suspended by the commission at any time." Therefore, when the city building inspector approved the plans for petitioner's building, which did not provide for inclosing the two stair wells, and issued the building permit calling for the erection of the building according to those plans, such permit was in effect an order that modified Order 5711 of the 1918 state building code.

We are not persuaded by the foregoing argument. Sec. 2394–41 (7), Stats. 1917 (now sec. 101.01 (7)), defines the word "order" as follows: "The term 'order' shall

---

[1] Such statute reads as follows:

"It shall also be the duty of the industrial commission, and it shall have power, jurisdiction, and authority:

"(13) To require the submission of proper plans and specifications for places of employment and public buildings, also for elevators, toilets, and other permanent equipment of such buildings. Where such plans and specifications are required by the commission, no local officer shall issue any permit or license for the construction or use of such building, until the plans and specifications therefor as to safety and sanitation shall have been approved by the commission. But this requirement shall not apply in cities where plans are examined and building permits issued by a city building inspector in a manner approved by the commission."

mean and include any decision, rule, regulation, direction, requirement, or standard of the commission, or any other determination arrived at or decision made by such commission." We deem it to be clear from this statutory language that only the commission can make an order, and that it is not a power that can be entirely delegated to some subordinate. The extent to which a public officer or administrative agency may subdelegate to subordinates an express delegated power, such as in the instant case to make an order, is well stated in *School Dist. v. Callahan* (1941), 237 Wis. 560, 576, 297 N. W. 407, as follows:

"However, the rule that requires an executive officer to exercise his own judgment and discretion in making an order of such nature does not preclude him from utilizing, as a matter of practical administrative procedure, the aid of subordinates directed by him to investigate and report the facts and their recommendation in relation to the advisability of the order, and also to draft it in the first instance. [Citing cases.] It suffices that the judgment and discretion finally exercised and the orders finally made by the superintendent were actually his own."

If only the commission has the power to make an order in the first instance, it necessarily follows that any modification of such order must also be by act of the commission and not some subordinate such as a city building inspector. We experience no difficulty in determining that the building permit does not constitute an order of the commission in the sense in which the word "order" is used in sec. 101.16, Stats. Therefore, there is no merit to the petitioner's contention that the enforcement order of April 29, 1957, is a local order which conflicts with an order of the commission. Petitioner's petition to the commission raises no issue under sec. 101.16, and the commission's consideration of, and action upon the same, is controlled by sec. 101.15.

*Estoppel.*

Petitioner's petition for review in the circuit court contains the following paragraph:

"That the Wisconsin Industrial Commission is estopped by reason of its conduct and by reason of the authority granted to the building inspector of the city of Milwaukee from now raising any question as to the alleged noncompliance with the alleged orders of the building code referred to herein."

There undoubtedly are situations in which equitable estoppel ought to be invoked against a government. We so held in *Libby, McNeill & Libby v. Dept. of Taxation* (1952), 260 Wis. 551, 51 N. W. (2d) 796. We deem the following comment by Prof. Kenneth Culp Davis made in his recently published Administrative Law Treatise is apposite as to the trend of the law with respect to invoking estoppel against a government (Vol. 2, p. 541, sec. 17.09):

"Even though the courts commonly assert without qualification that equitable estoppel does not apply to governmental units, and even though numerous holdings are based upon such assertions, still the number of holdings in which governmental units are estopped is substantial and growing, both in the federal courts and in the state courts.

"Since the doctrine of equitable estoppel is founded upon ideas of what is a fair adjustment when one party has relied to his detriment upon what the other party has held out, it is hard to see why the ideas of fairness should differ when one of the parties happens to be a governmental unit, especially when the subject matter relates to property or business dealings *and not to the processes of carrying out governmental policies.*" (Emphasis supplied.)

There are certain situations in which estoppel should not be permitted to be invoked against a government, or one of its agencies. Strong reasons of public policy exist why estoppel should not be invoked against the govern-

ment, or an agency of government, when it is sought to exercise the police power for the protection of the public health, safety, or general welfare. We quote with approval from the comment note entitled, "Applicability of doctrine of estoppel against government and its governmental agencies," 1 A. L. R. (2d) 338, 340:

"As a general rule the doctrine of estoppel will not be applied against the public, the United States government, or the state governments, where the application of that doctrine would encroach upon the sovereignty of the government and interfere with the proper discharge of governmental duties, and with the functioning of the government, or curtail the exercise of its police power; . . ."

Order 5711 of the 1918 state building code, which required that stair wells in buildings such as petitioners be inclosed, was promulgated by the commission to protect public safety. Therefore, there can be no estoppel invoked against the commission, or its deputized agent, in enforcing such safety order.

The principal ground for here asserting that estoppel should be invoked is that the commission knowingly permitted building inspector Harper to waive the requirements of such safety order with respect to buildings constructed of fire-resistant materials. In the recent case of *Connor Lumber & Land Co. v. Industrial Comm.* (1959), 6 Wis. (2d) 171, 176, 94 N. W. (2d) 145, the contention was raised that the employer should be relieved of a penalty, which was imposed by reason of its failure to comply with a safety order of the building code, because an inspector of the commission had acquiesced in the manner in which the building had been constructed by the employer. In rejecting such contention, we stated:

"Neither the commission nor any of its employees has any statutory power to waive such a violation."

*Necessity of Filing Code with City Clerk.*

Sec. 2394–52 (5), Stats. 1917 (now sec. 101.10 (5)), expressly authorizes the commission "To ascertain, fix, and order such reasonable standards, rules, or regulations for the construction, repair, and maintenance of places of employment and public buildings, as shall render them safe." Pursuant to such delegated power the commission did adopt a large group of safety orders which were embodied in the state building code. The original code was promulgated in 1914. Subsequently a further state building code was adopted in 1918 which by its terms was applicable to the petitioner's building erected in 1919.

By the provisions of sec. 2394–56, Stats. 1917, all general orders of the commission were to take effect thirty days after their publication in the official state paper. We take judicial notice that the 1918 state building code was so published more than thirty days prior to the petitioner's making application for its building permit.

In spite of such provision of sec. 2394–56, Stats. 1917, the petitioner contends that the 1918 state building code was not effective in the city of Milwaukee until a copy thereof had been filed with the city clerk. Such contention is grounded upon the italicized words appearing in the following quoted portion of sub. (1) of sec. 2394–58, Stats. 1917 (now sec. 101.16 (1)):

"Nothing contained in secs. 2394–41 to 2394–71, inclusive, shall be construed to deprive the common council, the board of aldermen, the board of trustees, or the village board of any village or city, or the board of health of any municipality of any power or jurisdiction over or relative to any place of employment or public building, *provided that, whenever the industrial commission shall, by an order, fix a standard of safety or any hygienic condition for employments or places of employment or public buildings, such order shall, upon the filing by the commission of a*

*copy thereof with the clerk of the village or city to which it may apply, be held to amend or modify any similar conflicting local order in any particular matters governed by said order."* (Italics supplied.)

Prior to the adoption of the 1918 state building code the city of Milwaukee had in force and effect a city building code. Sec. 212 of the 1914 Milwaukee building code provided in part as follows:

"Buildings three stories or more in height shall have at least one of the stairways inclosed in a fireproof shaft of not less than two-inch solid thickness and accessible from each floor of the building and all window and sash in such shaft shall be of metal and glazed with wire glass. All doors to this stairway shall be standard fire doors which close automatically and have metal frames."

The records in the office of the city clerk of Milwaukee disclose that the 1918 state building code was not filed in such office until November 12, 1935. It is the position of the petitioner that sec. 212 of the 1914 Milwaukee building code conflicts with Order 5711 of the 1918 state building code and, therefore, under the provisions of sec. 2394–58, Stats. 1917, the 1918 state building code did not become effective in Milwaukee until November 12, 1935. If the petitioner is correct in this contention, then there was no violation of the state building code by the petitioner in erecting its building in 1919 without inclosing the two stair wells.

There are two good reasons why such contention is unsound and cannot prevail.

First, sec. 2394–58, Stats. 1917, does not purport to stay the operation of general safety orders of the commission, such as the state building code, in a city like Milwaukee, which has enacted local safety orders, until the former have been filed with the city clerk. Instead, such statute only provides that locally enacted safety orders, which

conflict with general safety orders of the commission, shall not be deemed to have been amended or modified by such latter orders until such general orders have been so filed. Sec. 2394–58, Stats. 1917, should not be given the interpretation that by implication it nullified the provision of sec. 2394–56, Stats. 1917, that general orders of the commission take effect thirty days after publication in the state paper. When such publication is had and the thirty-day period has elapsed, such general orders have the force and effect of statutes.

Secondly, Order 5711 of the 1918 state building code and sec. 212 of the 1914 Milwaukee building code are not "conflicting" orders in the sense in which such term is used in sec. 2394–58, Stats. 1917. In order for two orders to be conflicting within the meaning of such statute, performance of one cannot be had without violating the other. Neither Order 5711 nor sec. 212 of the city code provides that a building owner shall not do more than prescribed by each in the way of safely inclosing stair wells. Therefore, it was possible for the petitioner to have complied with the requirements of both Order 5711 and sec. 212 of the city code.

### Was There a Contested Case?

Sec. 227.07, Stats., requires that administrative agencies afford the parties the "opportunity for full, fair, public hearing after reasonable notice" in any contested case before the agency makes final disposition of the case. Sec. 227.13 requires that every decision of an administrative agency in a contested case be in writing "accompanied by findings of fact and conclusion[s] of law."

The petitioner maintains that its petition to the commission necessitated compliance by the commission with these two statutes. Because of the fact that no hearing was

held other than resulted by the remand from the circuit court to take testimony, and the denial of the petition was not accompanied by findings of fact and conclusions of law, it is further contended that the case should be remanded to the commission for compliance with the requirements of secs. 227.07 and 227.13, Stats.

In order to resolve such issue, it is necessary to determine whether the filing with the commission of the petition by the petitioner, and the subsequent amendment of such petition, presented a "contested case" within the meaning of ch. 227, Stats. Sec. 227.01 (2), Stats., defines a "contested case" as follows:

" 'Contested case' means a proceeding before an agency in which, after hearing required by law, the legal rights, duties, or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty, or privilege is denied or controverted by another party to such proceeding."

In discussing such procedural provisions of the Wisconsin Administrative Procedure Act as are contained in secs. 227.07 and 227.13, Stats., Ralph M. Hoyt in his article explaining such act, which appeared in 1944 Wisconsin Law Review, 214, 220, states:

*"It should be noted that these rules are made applicable only to 'contested cases,'* which are defined in the opening section of the act as proceedings in which 'the legal rights, duties, or privileges of specific parties are required by law to be determined by decisions or orders addressed to them or disposing of their interests after opportunity for hearing.' Thus the rules apply only to those situations in which the law already requires an opportunity for hearing to be offered. The procedure set does not itself specify or determine what types of cases require a hearing; *that is a matter which is left for specification in the particular regulatory act which the agency administers."* (Emphasis supplied.)

It has been hereinbefore pointed out that the statute which permits the filing of the instant petition is sec. 101.15, Stats. Sub. (3) of such statute authorizes the commission to determine the issues raised by such a petition without a hearing if the same "have theretofore been adequately considered." We do not construe such provision as requiring any written record to have been kept of a prior consideration by the commission of the issues so raised as a condition precedent to the commission's deciding the merits of the petition without holding a hearing. A reviewing court has the right to invoke the presumption of regularity and conclude that the commission would not summarily deny a petition filed pursuant to sec. 101.15, unless it had at some prior time adequately considered the issues raised by such a petition.

We must assume that in adopting Order 5711 of the 1918 code, the commission adequately considered whether the requirements of such order should be made applicable to all public buildings and places of employment, or whether an exception should be made in favor of those constructed of fire-resistant materials. Therefore, the petitioner's petition presented nothing new that the commission had not theretofore adequately considered.

We, therefore, conclude that because sec. 101.15 (3), Stats., authorized the commission to determine the issues presented by the petition without a hearing, it necessarily follows that it was not confronted with a contested case within the meaning of ch. 227, Stats.

*The Issue of Due Process.*

The petitioner raises no issue that Order 5711 of the 1918 state building code is invalid because of its being "arbitrary or capricious" within the meaning of sec. 227.20 (1) (e), Stats. It does contend that the attempted en-

forcement of such order with respect to the petitioner's building under the circumstances of this case will deprive the petitioner of its property without due process of law.

Mr. Kirchhoff, the state architect, testified that there was adequate space available in petitioner's building in which to inclose the stair wells and that, outside of changing the location of a few apartment doorways, no other structural changes in the building would be necessary. He also expressed the unqualified opinion that the inclosure of the stair wells would not interfere with the usefulness or use of the building.

According to an estimate obtained by the petitioner from a contractor, the cost of making the changes in the building to comply with Order 5711 would be $9,450. Petitioner's net income derived from the building for the year 1957 (the last full year for which earning records were available at the time of taking testimony) was $10,189.91. Thus the cost of compliance to petitioner is slightly less than one year's net earnings.

On this record this court does not deem that it would be warranted in finding any violation of substantive due process.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.