STATE EX REL. THOMAS, Appellant, v. STATE and others, Respondents.

No. 330. Submitted June 6, 1972.—Decided July 7, 1972.
(Also reported in 198 N. W. 2d 675.)

344

The cause was submitted for the appellant on the brief of *Jerry Thomas, I,* of Waupun, pro se, and for the respondents on the brief of *Robert W. Warren,* attorney general, and *Michael R. Klos,* assistant attorney general.

HALLOWS, C. J.  In his petition,[1] Thomas alleges he has suffered an ailment for months involving a bowel problem and lower abdominal pain and during the past ten months has seen the prison doctor many times, but the doctor has done nothing to correct the prcblem.  He alleges he has availed himself of sick call on many occasions but has obtained no relief and since his arrival in the prison in October, 1969, he has not received a physical examination, despite his complaints.

When the petition was dismissed, Judge GERGEN sent copies thereof to the department of health & social services.  Thomas alleges he has heard of no determination by that department.  Thomas is a veteran and alleges he wrote to the Veterans Administration asking it to do what it could to see he received treatment, but this letter was returned to him unmailed by prison authorities on the ground it violated prison rules.

The court believes a writ should issue requiring the warden and the department to make a determination of the adequacy of medical treatment of Thomas, if it has not already done so and to justify the prison rule forbidding an inmate to communicate by mail with the Veterans Administration.

In denying the petition, Judge GERGEN was of the opinion Thomas had not exhausted his administrative remedies; and if a prisoner required hospitalization or medical treatment not available at the prison, the department of health & social services should transfer the prisoner to the university hospital for the care needed. Judge GERGEN was under the impression that upon the department's failure to effect such transfer, the prisoner had a right to a judicial review of the determination of the department.

---

[1] We must view this pro se petition, and it was so treated by the court below, as being against the secretary of the department of health & social services, the head of the division of corrections, and the warden of the state prison at Waupun.

It is settled that mandamus does not supersede other legal remedies and is not available when a result sought can be adequately accomplished by other and as yet unexhausted means. *State ex rel. Henshall v. Ludington* (1873), 33 Wis. 107; *State ex rel. Racine County v. Schmidt* (1959), 7 Wis. 2d 528, 97 N. W. 2d 493; *Beres v. New Berlin* (1967), 34 Wis. 2d 229, 148 N. W. 2d 653; 52 Am. Jur. 2d, *Mandamus,* pp. 370, 371, sec. 46. The state in its brief claims Thomas has not exhausted his available administrative remedies, but it does not enlighten this court by stating what those remedies are and how adequate they may be.[2] We do not think the possible administrative remedies are adequate. Provisions for a review of an administrative decision under sec. 227.15, Stats.,[3] would not seem to be applicable because if Mr. Thomas is to be transferred to the university hospital for treatment, the application to the regents must be made by the department on its own motion under sec. 46.115.[4] There is no provision for a hearing or

[2] An administrative remedy is the type of alternative remedy which would ordinarily preclude resorting to mandamus. *Beres v. New Berlin, supra.*

[3] "227.15 **Judicial review; orders reviewable.** Administrative decisions, which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the department of revenue, the commissioner of banking and the commissioner of savings and loan, shall be subject to judicial review as provided in this chapter; but if specific statutory provisions require a petition for rehearing as a condition precedent, review shall be afforded only after such petition is filed and determined."

[4] "46.115 **Sick inmates; transfer to state hospital; treatment.** (1) The department shall apply to the board of regents of the university of Wisconsin for the admission to the Wisconsin general hospital of any inmate of any state institution under the department, or of any person committed to or applying for admission thereto, or of any other person committed to the department, who is afflicted with any deformity or ailment, which can probably be remedied, or which can be advantageously treated at such hospital, if he cannot receive proper care at the institution

a formal disposition by the department of any petition by the inmate for such a transfer. The term "decision" as used in sec. 227.15, which is subject to judicial review, means a decision which is made after a statutorily prescribed hearing and fact finding. In *Frankenthal v. Wisconsin Real Estate Brokers' Board* (1958), 3 Wis. 2d 249, 253, 88 N. W. 2d 352, 89 N. W. 2d 825, we stated:

"The *Wisconsin Telephone Co. Case* [(1948), 253 Wis. 584, 34 N. W. 2d 844] held that it was the legislative intent that administrative agency decisions which are reviewable under sec. 227.15, Stats., be final orders entered at the end of *contested proceedings* which are based on *findings of fact* required under sec. 227.13. In the instant case there was no *contested proceeding* in which the plaintiffs were accorded a hearing, and no findings of fact whatever were attempted to be entered."

*See also: Universal Organization of Municipal Foreman, Supervisors & Administrative Personnel v. WERC* (1969), 42 Wis. 2d 315, 320, 166 N. W. 2d 239; *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. 2d 78, 92, 100 N. W. 2d 571; Hoyt, *Wisconsin Administrative Procedure Act,* 1944 Wis. L. Rev. 214, 220. A determination by the department not to make an application would not seem to qualify as a decision under sec. 227.15 as there is no statutorily prescribed hearing.

Another possible remedy is suggested by sec. 227.06, Stats.,[5] which allows an interested person to petition an

to which he has been committed or to which he has applied for admission. The application shall be accompanied by the report of the physician of such institution or of a physician appointed by the department, in the same form as reports of physicians for the admission of patients to the hospital."

[5] "227.06 **Declaratory rulings.** (1) Any agency may, on petition by any interested person, issue a declaratory ruling with respect to the applicability to any person, property or state of facts of any rule or statute enforced by it. Full opportunity for hearing shall be afforded to interested parties. A declaratory ruling shall

agency for a declaratory ruling with respect to the applicability of a statute. Under this section, Thomas could conceivably ask for a ruling from the department as to whether it should transfer him to the university hospital for medical treatment, and such a ruling is reviewable in the same manner as "decisions" are under sec. 227.15. However, the issuance of such a ruling is discretionary and does not afford the petitioner as a matter of right with an appealable ruling. *Wisconsin Fertilizer Asso. v. Karns* (1968), 39 Wis. 2d 95, 107, 158 N. W. 2d 294. Consequently, this method cannot be called an alternative remedy which is plain, adequate, and complete, as required by the cases. *State ex rel. Racine County v. Schmidt, supra; Burke v. Madison* (1962), 17 Wis. 2d 623, 631, 117 N. W. 2d 580, 118 N. W. 2d 898; *Beres v. New Berlin, supra,* at page 234; 55 C. J. S., *Mandamus,* p. 47, sec. 17. We conclude therefore the possible remedies under ch. 227 should not preclude a resort to mandamus.

The trial court refused the writ also on the ground it would be an attempt to control the exercise of the department's discretion. It is true mandamus will not lie to control the manner in which a governmental body or officer exercises his statutorily conferred discretion. *State ex rel. Comstock v. Joint School Dist.* (1886), 65 Wis. 631, 27 N. W. 829; *Cartwright v. Sharpe* (1968), 40 Wis. 2d 494, 162 N. W. 2d 5; *State ex rel. Kurkierewicz v. Cannon* (1969), 42 Wis. 2d 368, 166 N. W. 2d 255. Here, the gist of Thomas' petition is that he is not receiving effective or proper medical care at the prison and could be helped by a transfer to the Wisconsin General Hospital. These allegations are as yet undisputed in the record and, if true, the department must apply

---

bind the agency and all parties to the proceedings on the statement of facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the circuit court in the manner provided for the review of administrative decisions."

under sec. 46.115, Stats., to the board of regents of the University of Wisconsin for admission to the Wisconsin General Hospital for the inmate Thomas. On the basis of this record, we cannot determine whether the department in the good-faith exercise of its discretion reviewed and analyzed the medical needs of Mr. Thomas and determined his condition was such he needed no medical care other than what was given in the state prison or whether it has failed or refused to make a determination of his case beyond a refusal by the warden of the state prison to reverse the prison doctor's opinion, which presumably is that Thomas is getting adequate treatment.

Since the department is statutorily required to exercise its discretion concerning the adequacy of the health treatment and care of an inmate and this record does not show that it has done so, mandamus will lie to compel the exercise of that discretion. 52 Am. Jur. 2d, *Mandamus,* p. 398, sec. 77; 55 C. J. S., *Mandamus,* pp. 225, 226, sec. 135. While mandamus will not lie to compel a specific result, the writ will lie to determine whether the discretion was abused or whether the discretion was exercised arbitrarily and capriciously. *State ex rel. Knudsen v. Board of Education* (1969), 43 Wis. 2d 58, 67, 168 N. W. 2d 295; *State ex rel. Hurley v. Schmidley* (1970), 48 Wis. 2d 659, 663, 664, 180 N. W. 2d 605; 52 Am. Jur. 2d, *Mandamus,* pp. 401, 402, sec. 79. The issue presented by the petition was not whether Thomas' medical condition could be better treated in a hospital than in the prison, because that evaluation is left to the discretion of the department. The question presented was whether the department and its prison employees have made any meaningful determination of Thomas' condition and in doing so have properly exercised their discretion. The petition claims Thomas' attempts to get departmental action have been fruitless. The record does not disclose any action on the part of the department

even after Judge Gergen sent the complaining petition to the department. This case seems to be one of continual roadblocks to get to the merits of the controversy. Much time of this court could be saved if similar petitions were decided on their merits rather than having technical and procedural defenses interposed which only delay the ultimate decision and create additional judicial work in the meantime.

We think an order should be granted requiring the department to answer the petition on its merits. The return should be in sufficient detail so that the trial court can determine whether there has been any abuse of discretion [6] if a determination has already been made that Thomas does not need the additional medical treatment.

[6] Federal courts in recent days have been called on to pass upon claims under 42 USCA, sec. 1983, involving inadequate medical care and resultant infliction of cruel and unusual punishment. *Shields v. Kunkel* (9th Cir. 1971), 442 Fed. 2d 409 (misdiagnosis or malpractice does not create a sec. 1983 claim; there must be failure or refusal to provide care, or mistreatment under such exceptional circumstances as to approach no treatment at all); *Tolbert v. Eyman* (9th Cir. 1970), 434 Fed. 2d 625 (authorities have wide discretion and mere malpractice is not actionable under sec. 1983, but failure or refusal to provide care, or the giving of care so cursory as to be no care at all, is constitutionally actionable); *Haskew v. Wainwright* (5th Cir. 1970), 429 Fed. 2d 525 (court should not inquire into adequacy of care unless abuse of officials' broad discretion shown); *Church v. Hegstrom* (2d Cir. 1969), 416 Fed. 2d 449 (to state a sec. 1983 claim, allegations must suggest conditions which "shocks the conscience" or equals a "barbarous act"); *Riley v. Rhay* (9th Cir. 1969), 407 Fed. 2d 496 (despite wide discretion, officials' failure or refusal to provide medical care creates constitutional issues, and a complaint not insufficient on its face warrants evidentiary hearing); *Stiltner v. Rhay* (9th Cir. 1967), 371 Fed. 2d 420, certiorari denied (1967), 386 U. S. 997, 87 Sup. Ct. 1318, 18 L. Ed. 2d 346 (failure to provide medical care may reach constitutional dimensions in exceptional circumstances); *Webb v. Oswald* (S. D. N. Y. 1971), 334 Fed. Supp. 993 ("shocks the conscience," "barbarous act" test, *see Church v. Hegstrom, supra*); *Sawyer v. Sigler* (D. Neb. 1970), 320 Fed. Supp. 690, affirmed (8th Cir. 1971), 445 Fed. 2d 818

The court also believes the refusal to mail Thomas' letter to the Veterans Administration may represent an interference with his constitutional rights. The state argues the regulation of prisoners' mail is a component of incarceration which is permissible provided it does not interfere with inmates' access to the courts, relying on *McKinney v. DeBord* (E. D. Cal. 1970), 324 Fed. Supp. 928; *Prewitt v. State of Arizona ex rel. Eyman* (D. Ariz. 1969), 315 Fed. Supp. 793, affirmed (9th Cir. 1969), 418 Fed. 2d 572. We do not construe a prisoner's constitutional rights so narrowly. Imprisonment is not totally a civil death. A prisoner retains not only the freedom to have adequate access to the courts, *Johnson v. Avery* (1969), 393 U. S. 483, 89 Sup. Ct. 747, 21 L. Ed. 2d 718, but also the broader right to petition the government for redress of grievances, which right includes the right of access to the courts. *Cruz v. Beto* (1972), 405 U. S. 319, 92 Sup. Ct. 1079, 31 L. Ed. 2d 263. Grievances may concern treatment of a prisoner as well as his incarceration. The Veterans Administration is a governmental agency concerned with the welfare of veterans, including furnishing medical services to them. A prisoner should have the right to inquire by mail of such governmental agency concerning his medical treatment in the prison. The record does not show and we perceive no reason why such a letter would endanger security of the prisoner or of the prison, or why a rule against such a letter is neces-

(constitutional claim is presented if there is obvious neglect or intentional mistreatment); *Prewitt v. State of Arizona ex rel. Eyman, supra* (only exceptional circumstances warrant federal court intervention, and response by warden showing investigation of medical complaints warranted dismissal of complaint). *See also: Weaver v. Beto* (5th Cir. 1970), 429 Fed. 2d 505; *Cates v. Ciccone* (8th Cir. 1970), 422 Fed. 2d 926 (habeas corpus); *Blanks v. Cunningham* (4th Cir. 1969), 409 Fed. 2d 220 (habeas corpus); *Black v. Ciccone* (W. D. Mo. 1970), 324 Fed. Supp. 129 (habeas corpus). For additional materials, *see* R. Singer, *Prisoners' Legal Rights: A Bibliography of Cases and Articles* (1971).

sary or justified on the basis of rehabilitation or punishment. Letters critical of prison administration cannot be forbidden because they cause embarrassment or inconvenience to prison authorities. There must be a predominant compelling public interest to curtail the exercise of a constitutional right by an individual. *Sherbert v. Verner* (1963), 374 U. S. 398, 83 Sup. Ct. 1790, 10 L. Ed. 2d 965; *State v. Yoder* (1971), 49 Wis. 2d 430, 182 N. W. 2d 539.

While we hold Thomas' right to contact the Veterans Administration is protected as a petition for redress of grievances, a prisoner's right to correspond freely with persons or groups outside the prison, whether public officials or not, may be based upon the first amendment's free-speech guarantee as well. Questions involving the denial and censorship of prisoners' correspondence have recently received increased attention from legal authors.[7]

[7] Symposium, *Prisoners' Rights and the Correctional Scheme: The Legal Controversy and Problems of Implementation*, 16 Vill. L. Rev. 1029 (1971). Turner, *Establishing the Rule of Law in Prisons: A Manual for Prisoners' Rights Litigation*, 23 Stan. L. Rev. 473, 508 (1971). Jacob, *Prison Discipline and Inmates' Rights*, 5 Harv. Civ. Rights—Civ. Lib. L. Rev. 227 (1970). Singer, *Bringing the Constitution to Prison: Substantive Due Process and the Eighth Amendment*, 39 U. Cin. L. Rev. 650 (1970). Singer, *Censorship of Prisoners' Mail and the Constitution*, 56 ABAJ 1051 (1970). Hirschkop & Millemann, *The Unconstitutionality of Prison Life*, 55 Va. L. Rev. 795 (1969). Muraskin, *Censorship of Mail: The Prisoners' Right to Communicate by Mail With the Outside World*, 48 Prison J. 33 (1968). *Note—Constitutional Law—Censorship of Prisoners' Mail*, 19 Univ. of Kan. L. Rev. 747 (1971). Note, *Constitutional Law—Prison Officials Opening of Inmates' Outgoing Mail and Incoming Mail From Attorneys, Courts, and Public Officials Violates First Amendment Right of Free Speech—Palmigiano v. Travisono*, 317 Fed. Supp. 776 (D. R. I. 1970), 22 Syracuse L. Rev. 818 (1971). Note, *Palmigiano: The Constitutionality of Prison Mail Censorship*, 21 Cath. L. Rev. 215 (1971). Note, *Prisoner Correspondence: An Appraisal of the Judicial Refusal to Abolish Banishment as a Form of Punishment*, 62 J. Crim. L. C. & P. S. 40 (1971). Note, *Prisoner Rights: The*

Federal courts likewise have been increasingly called upon to review the validity of restrictions on prisoners' correspondence in the light of the constitution.[8] Consideration of prison-censorship policies has frequently been stated in terms of a conflict between two oft-quoted views, one expressed in *Price v. Johnston* (1948), 334 U. S. 266, 285, 68 Sup. Ct. 1049, 92 L. Ed. 1356, and the other in *Coffin v. Reichard* (6th Cir. 1944), 143 Fed. 2d 443, 445, certiorari denied (1945), 325 U. S. 887, 65 Sup. Ct. 1568, 89 L. Ed. 2001. In *Price* it is stated: "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." In *Coffin* the court stated: "A prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law."

In *Burns v. Swenson* (8th Cir. 1970), 430 Fed. 2d 771, a prisoner's right to correspond with the American Civil Liberties Union was sustained, and in *McDonough v. Director of Patuxent* (4th Cir. 1970), 429 Fed. 2d

*Evidentiary Use of Prisoner Mail*, 1971 Wash. U. L. Q. 109. Note, *Prisoner Rights—Federal Jurisdiction, Due Process, Indefinite Solitary Confinement, Censorship of Mail, Inmate Legal Assistance, Freedom of Expression and Damages*, 21 Buff. L. Rev. 539 (1971). Note, *Prison Mail Censorship and the First Amendment*, 81 Yale L. J. 87 (1971). Note: *Inmates' Right to Correspond*, 2 Seton Hall L. Rev. 525 (1970). Note, *Prison Censorship of Attorney-Client Mail*, 22 Baylor L. Rev. 623 (1970). Note, *The Right of Expression in Prison*, 40 So. Cal. L. Rev. 407 (1967). Note, *Beyond the Ken of the Courts: A Critique of Judicial Refusal to Review the Complaints of Convicts*, 72 Yale L. J. 506, 537–540 (1963). Note, *Constitutional Rights of Prisoners: The Developing Law*, 110 U. Pa. L. Rev. 985 (1962). Note, *Enforcement of Prison Discipline and Its Effect Upon the Constitutional Rights of Those Imprisoned*, 8 Vill. L. Rev. 379 (1963).

[8] *Corby v. Conboy* (2d Cir. 1972), 457 Fed. 2d 251 (undenied allegations of censorship of letters to family containing prison news state claim under 42 USCA, sec. 1983, absent some showing

1189, the right to contact a psychiatrist and magazine to prepare for a hearing on the prisoner's mental condition was upheld. While both these cases treated the sending of these letters by mail was a concomitant to the right to gain access to the courts, in *Nolan v. Fitzpatrick* (1st Cir. 1971), 451 Fed. 2d 545, the court upheld a prisoner's right to contact the press on the ground of free speech. Also, in *Palmigiano v. Travisono* (D. R. I. 1970), 317 Fed. Supp. 776, and *Conklin v. Hancock* (D. N. H. 1971), 334 Fed. Supp. 1119, first-amendment protections were applied to a prisoner's correspondence with public officials. The courts, in recognizing the first-amendment rights in the range of prison mail censorship, require the government to justify first-amendment curbs against such standards as the "clear and present danger," "compelling interest," or "less drastic means." 81 Yale L. J., supra, at 94.

of threat to discipline or security); *Evans v. Moseley* (10th Cir. 1972), 455 Fed. 2d 1084 (no right to write to attorney about subjects other than legality of incarceration or prison conditions); *Andrade v. Hauck* (5th Cir. 1971), 452 Fed. 2d 1071 (prisoner cannot be denied right to communicate with three branches of government); *Nolan v. Fitzpatrick* (1st Cir. 1971), 451 Fed. 2d 545 (prisoner retains right to write to press concerning prison matters, notwithstanding flat ban on all such letters, in view of less drastic means available to attain legitimate prison ends); *LeVier v. Woodson* (10th Cir. 1971), 443 Fed. 2d 360 (prisoner retains right to write to attorney, courts or appropriate state officials concerning legality of detention or treatment); *Sostre v. McGinnis* (2d Cir. 1971), 442 Fed. 2d 178 (improper to refuse to mail prisoner's letter to postal inspector concerning failure of authorities to return receipts for certified mail, as prison officials may not in absence of special circumstances withhold or censor letters to courts, attorneys or public officials intended to advance effort to get redress for abuses); *Burns v. Swenson* (8th Cir. 1970), 430 Fed. 2d 771 (cannot forbid correspondence with ACLU, to extent it represents attempt to gain access to courts); *McDonough v. Director of Patuxent* (4th Cir. 1970), 429 Fed. 2d 1189 (prisoner has right to correspond with psychiatrist and national magazine to prepare for and finance upcoming judicial

The modern view of a prisoner's rights guaranteed by the first amendment, when applied specifically to writing letters, is that the prisoner retains such rights unless the government can show the restrictions are related both reasonably and necessarily to the advancement of some justifiable purpose of imprisonment, such as rehabilitation or the security of the prisoner and the

hearing on his mental condition); *Diehl v. Wainwright* (5th Cir. 1970), 419 Fed. 2d 1309 (no right to take correspondence Bible course, decision being one of prison official's discretion); *Brown v. Wainwright* (5th Cir. 1969), 419 Fed. 2d 1308 (prison mail censorship is matter for prison officials' discretion); *Lee v. Tahash* (8th Cir. 1965), 352 Fed. 2d 970 (prison may refuse to mail letter to attorney with statements critical of rules and policy, where "proper" letters concerning legal matters are delivered); *Pope v. Daggett* (10th Cir. 1965), 350 Fed. 2d 296, vacated as moot (1966), 384 U. S. 33, 86 Sup. Ct. 1285, 16 L. Ed. 2d 334 (refusal to forward letter to chief probation officer concerning presentence report not improper, as control over mail is administrative matter); *McCloskey v. Maryland* (4th Cir. 1964), 337 Fed. 2d 72 (no right to conduct virtual anti-Semitic campaign outside prison, absent any relation to attempt to test validity of conviction or punishment); *Morales v. Schmidt* (W. D. Wis. 1972), 340 Fed. Supp. 544 (officials failed to show compelling governmental interest in refusing to forward a prisoner's letter to his lover); *Conklin v. Hancock* (D. N. H. 1971), 334 Fed. Supp. 1119 (mail to attorneys and public officials may not be read); *Landman v. Royster* (E. D. Va. 1971), 333 Fed. Supp. 621 (may not intercept mail to legislators or public officials); *Smith v. Robbins* (D. Me. 1971), 328 Fed. Supp. 162 (letters from attorney may be inspected for contraband only in presence of inmate); *Palmigiano v. Travisono* (D. R. I. 1970), 317 Fed. Supp. 776 (officials enjoined from opening or inspecting contents of letters from or to named officials—President, governor, judges, licensed attorneys); *Carothers v. Follette* (S. D. N. Y. 1970), 314 Fed. Supp. 1014 (cannot stop letter to parents critical of prison life, as any restriction may be reasonably and necessarily related to justifiable purpose of imprisonment); *see also: Brabson v. Wilkins* (1967), 19 N. Y. 2d 433, 227 N. E. 2d 383, 280 N. Y. Supp. 2d 561 (may not interfere with communication with court, attorney, or government official concerning legality of detention or treatment).

prison.[9] Mere convenience of the prison administration is not sufficient.

A total prohibition against communication would be unconstitutional. Thus sec. 53.09, Stats.,[10] would be subject to attack on this ground excepting it delegates to the prison authorities the right to make regulations. This statute may be read to require reasonable regulations which effectuate legitimate administrative objectives without infringing the first-amendment rights of prisoners. The statute certainly does not grant all the powers of an absolute censor to the department of health & social services. The fact the prisoners have first-amendment rights makes it necessary for courts to review complaints which involve prison administration. The courts cannot upon a hands-off doctrine exercise "abstention" when the constitutionality of the administration's act is at issue. *See Cooper v. Pate* (1964), 378 U. S. 546, 84 Sup. Ct. 1733, 12 L. Ed. 2d 1030 (a sec. 1983 case).

We understand that regulations of the prison limit the number of letters which may be written per week, the number of correspondents to whom a prisoner may write, and forbids, as in this case, correspondence with certain classes of persons. Whether such a regulation violates any of the standards used to test a restriction of first-amendment rights is the question. On this record, which does not include the detailed regulations or any justification for the regulations, we think Thomas is entitled to an injunction restraining the prison officials

[9] *See Nolan v. Fitzpatrick, supra; Morales v. Schmidt, supra;* and *Carothers v. Follette* (S. D. N. Y. 1970), 314 Fed. Supp. 1014.

[10] "53.09 **Labor and communications.** Inmates shall be employed as provided in chapter 56. Communication shall not be allowed between inmates and any person outside the prison except as prescribed by the prison regulations."

from interfering with his mail to the Veterans Administration unless the department can show justification for its action. The trial court should have required the warden and the department of health & social services to answer the petition on the merits. This case should be remanded for a return so the trial court can pass upon the merits of the issues raised.

*By the Court.*—The order dismissing the petition is reversed with directions to order the respondent to file a return on the merits and for further proceedings not inconsistent with this opinion.

ROBERT W. HANSEN, J. (*dissenting*). The prisoner-petitioner seeks a writ of mandamus to compel his transfer to a state hospital and an injunction to permit him to write letters to a federal administrative agency.

As to compelling transfer from prison to hospital, the majority opinion finds the prison authorities are required by statute to exercise their discretion concerning adequacy of health care at the prison and need for transfer to a state hospital for treatment.

Mandamus, the majority holding makes clear, will not lie to compel a specific result. It will lie only to determine (1) whether statutorily conferred discretion was abused; (2) whether such discretion was exercised arbitrarily and capriciously; or (3) to compel the exercise of that discretion. The issue of whether the prisoner could be better treated in a hospital than in the prison is not before us, because, in the words of the majority opinion, ". . . that evaluation is left to the discretion of the department."

Finding that this record does not show that statutorily conferred discretion was in fact exercised by the prison authorities, the majority enters an order "requiring the department to answer the petition on its merits." Exercise of discretion established, the trial court is to deter-

mine "whether there has been any abuse of discretion." The record being foggy enough, the writer does not disagree with such limited return for such limited purpose.

As to permitting the letter writing to a federal administrative agency, the court majority changes signals and runs in the opposite direction. A specific Wisconsin statute confers upon prison authorities the discretion to regulate communication between prison inmates and any person outside the prison.[1] That discretion was here exercised by the return of the prisoner's letter to him as violative of prison rules. Here the majority opinion challenges not only the exercise of discretion but the validity of prison regulations that, in its words, "limit the number of letters which may be written per week, the number of correspondents to whom a prisoner may write," and "forbids, as in this case, correspondence with certain classes of persons."

Such sweeping challenge to the right of prison authorities to regulate outgoing mail from prison inmates, the majority holds, is required because of first-amendment assurances as to ". . . the right of the people . . . to petition the Government for a redress of grievances," and the second is that "Congress shall make no law . . . abridging the freedom of speech."[2] It is not new to note that a prisoner has the right to write to his counsel, the courts or governor in regard to his conviction or conditions in the prison. What is new is the majority's implication that "freedom of speech" is a constitutionally assured right of prison inmates. Actually, what the majority terms the "modern view" on the applicability of "freedom of speech" guarantees to convicted felons in state or federal penal institutions goes beyond narrowing the area of discretion within which prison authorities may regulate and control prisoner mail. The majority

[1] Sec. 53.09, Stats.
[2] Art. I, Amendments to the United States Constitution.

opinion would put the burden on prison authorities in any situation to show that any restrictions on prisoner correspondence are ". . . both reasonably and necessarily . . ." related to the advancement of, ". . . some justifiable purpose of imprisonment. . . ." Applying such approach and cited by the majority is a federal district court level decision where a federal district judge found such "compelling governmental interest" not shown where a prison inmate was prevented from corresponding with a married woman, not his wife.[3] The majority opinion and its "modern view" would bulldoze the general rule as to prison mail as followed in most jurisdictions up to now. That general rule, which the writer would follow and here apply, is:

". . . the general rule [is] that the regulation of the flow of mail from a penal institution is essentially an administrative matter for prison officials and their action in regard thereto is not subject to judicial review except under the most unusual circumstances. . . ."[4]

To this general rule, that mailing privileges fall within the internal management area, there has been recognized a definite, but limited, exception, well stated to be:

". . . we recognized as a 'narrow exception' to the general rule the right of a prisoner to correspond with his attorney, or the courts, or appropriate state officials, regarding the legality of his conviction or the condition of his incarceration. . . ."[5]

---

[3] *Morales v. Schmidt* (W. D. Wis. 1972), 340 Fed. Supp. 544.

[4] *Evans v. Moseley* (10th Cir. 1972), 455 Fed. 2d 1084, 1087. *See also:* 60 Am. Jur. 2d, *Penal and Correctional Institutions*, p. 855, sec. 47, stating: "Ordinarily the regulation of prisoners' mail is a matter within the administrative discretion of prison officials, and in the absence of a showing of a violation of a legal right or of an abuse of discretion by prison officials, a court should not interfere. . . ."

[5] *Evans v. Moseley, supra,* at page 1087 (citing *LeVier v. Woodson* (10th Cir. 1971), 443 Fed. 2d 360). *See also:* 60 Am. Jur. 2d, *Penal and Correctional Institutions*, p. 857, sec. 49, stating: "Prison officials should not interfere with a prisoner's access to the courts,

It is this exception to the rule which protects the right of a prisoner to communicate with counsel, courts, governor or public official but only "regarding the legality of his conviction or the condition of his incarceration." This is the "redress of grievances" exception to the general rule. Persons in prisons, like other individuals, have the right to petition the government for redress of grievances which, of course, includes " 'access of prisoners to the courts for the purpose of presenting their complaints.' " [6]

However, in the case before us, the letter which the prisoner sought to send concerned medical facilities and services of the Veterans Administration, an agency of the federal government. The V. A. is a service-providing and facilities-maintaining federal agency. It has no authority, jurisdiction or role as to the legality of the prisoner's conviction or the conditions of his incarceration following conviction in a state court. It would take a lot of stretching to bring the letter to the V. A. within the "redress of grievances" exception to the general rule that control of prison mail is a matter of administrative discretion for prison authorities to determine.

However, if the majority had held no more than that the letter here fell within the "redress of grievances" exception, all that would have occurred would be that the doorway was widened as to what classes or categories of persons may be written to by a prison inmate. Whether based on "redress of grievances" or public policy considerations, the result would have been that prisoners, where the condition of their health is at issue in either a challenge to conviction or to conditions of incarceration, may write to any physician, any hospital

or with a reasonable correspondence designed to procure for the prisoner legal assistance for the purpose of testing the validity of his conviction or the constitutionality of punitive treatment which he may claim to be cruel and unreasonable. . . ."

[6] *Cruz v. Beto* (1972), 405 U. S. 319, 92 Sup. Ct. 1079, 31 L. Ed. 2d 263.

or to the medical and hospital facilities maintained by the Veterans Administration. That goes further than the writer would, but at least the definite limits to the widened exception of the general rule that the control of prison mail is a matter of prison administration [7] would be clear. The majority has gone further than that.

Not content with widening the doorway, the majority opinion has knocked the door off its hinges. This it has done by finding the first-amendment guarantee of freedom of speech applicable to prison inmates in state penal institutions, unless the prison authorities can show something more than ". . . [m]ere convenience of the prison administration." If this approach were to be generally accepted, and we doubt that it will,[8] the unenviable task of jailers and prison employees would become not only more difficult, but also far more dangerous to themselves and all those confined in prisons. Under optimum conditions, compressing and confining a considerable number of convicted felons, some aggressive and acting-out psychopathic personalities in a prison setting, creates a volatile situation. The maintenance of order and the avoiding of individual or group

---

[7] *Brown v. Wainright* (5th Cir. 1969), 419 Fed. 2d 1308, holding, "The control of prison mail is a matter of prison administration. The claim here does not rise to the level of a federal claim . . ." (Holding prison mail censorship is a matter for prison officials' discretion.) *Diehl v. Wainwright* (5th Cir. 1970), 419 Fed. 2d 1309 (citing *Granville v. Hunt* (5th Cir. 1969), 411 Fed. 2d 9, 12), stating at pages 1309, 1310: "'[T]his Court has been very chary about interfering in the internal operation and administration of prison systems, and we have done so only in exceptional cases . . . .' The 'exceptional cases' have generally been limited to situations where the complaint states facts indicating an abuse of administrative discretion. . . ."

[8] "We reject as frivolous appellant's contention that the First Amendment embraces the unlimited right to take correspondence courses. The prison officials' decision was simply an exercise of administrative discretion. . . ." *Diehl v. Wainwright, supra,* at page 1309.

acts of inmate violence are the essence of proper prison management. Without the maintenance of order within the prison, neither its custodial nor rehabilitative purposes can be served or advanced. A prison is not a place of "civil death," the majority states. Neither is it a Hyde Park in London, or a branch office of the United States postal service. Neither the maintenance of discipline nor the promotion of rehabilitation would be served by providing a soapbox or an unlimited mailing service to those in jails or prisons.[9] The first-amendment guarantee of "freedom of speech" cannot be applied in a prison situation without serious consequences involving the lives and safety of both inmates and prison employees. In the writer's opinion, it need not be.

The United States Supreme Court has made it clear that not all constitutional rights and privileges are available to convicted felons in penal institutions. The majority opinion sets forth the clear-cut statement of the nation's highest court on the exact point, to wit:

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."[10]

This controlling statement of the high court is, however, referred to in the majority opinion as no more than part of ". . . a conflict between two oft-quoted views."

[9] See: Evans v. Moseley, supra, where the Tenth Circuit Court of Appeals dealt with the "right" of a prisoner to have a letter mailed to an attorney not connected with his case nor retained by him. The correspondence was "part of his efforts" to establish within the prison a chapter of a "Black United Front" or activist-type inmate organization. The appeals court noted at page 1087 that the prisoner and his fellow inmates ". . . desired to solicit his [the attorney's] help in their efforts to establish a chapter inside the prison. . . ." To the prisoner's claim that he had a "constitutional right" to have his letter mailed, the appeals court answered, "We disagree."

[10] Quoted from the majority opinion, citing Price v. Johnston (1948), 334 U. S. 266, 285, 68 Sup. Ct. 1049, 92 L. Ed. 1356.

The other view is stated to be that of one federal appeals court in a case which the United States Supreme Court declined to review.[11] Something new has been added to constitutional law if such refusal to grant certiorari in a later case constitutes a reversal or modification of a clear-cut and definite ruling by the nation's highest court on a particular phase of constitutional law.

Until it is reversed or modified by the court that wrote it, the *Price* decision establishes that confinement in prison ". . . brings about the necessary withdrawal" of many privileges and rights.[12] One such right withdrawn is, the writer submits, the right to write to whom one will about what one chooses. The right and privilege to write one's attorney, the courts, or a public official or department whose function includes concern with convictions and conditions in prisons sufficiently protects the "redress of grievances" right. To add "freedom of speech" as a right assured prison inmates appears to the writer unnecessary, unwise and an assurance of future difficulties.

The writer would deny injunctive relief to the prisoner-petitioner, finding no abuse of discretion, statutorily conferred, and finding no invasion of constitutional rights and privileges in the refusal—under the rules—of the prison authorities to mail the letter from the prison inmate to a federal administrative agency.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.

---

[11] *Coffin v. Reichard* (6th Cir. 1944), 143 Fed. 2d 443, 445, certiorari denied (1945), 325 U. S. 887, 65 Sup. Ct. 1568, 89 L. Ed. 2001, stating: "A prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law."

[12] *Price v. Johnston, supra,* at page 285.