Gerald GAUGH, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Wilbur J. SCHMIDT, Individually and as Secretary of the Department of Health and Social Services of the state of Wisconsin, et al., Defendants.

No. 72-C-64.

United States District Court, W. D. Wisconsin.

Jan. 17, 1974.

Anthony J. Theodore, Corrections Legal Services Program, Madison, Wis., for plaintiff.

Atty. Gen. Robert Warren, by Robert D. Repasky, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This civil action for monetary and injunctive relief challenges the constitutionality of censorship of prisoners' reading material by corrections officials. Plaintiff has been granted leave to proceed *in forma pauperis*. 28 U.S.C. § 1915. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3). In my order of June 14, 1973, plaintiff's motion for summary judgment was denied with respect to the damage claim and plaintiff was ordered to show cause why the injunctive claim should not be dismissed as moot. Plaintiff has submitted a brief in response to the show cause order.

### Mootness

Plaintiff was confined at the Wisconsin State Prison, Waupun, when the complaint was filed. He was subsequently transferred to the Wisconsin Correctional Institution, Fox Lake. The complaint alleges that plaintiff ordered three books dealing with sexual matters to be sent to him at the prison; that defendant Jensen, principal of the prison school, informed plaintiff when the books arrived that plaintiff would not be

allowed to receive them; that Jensen's actions were in accord with policy established by defendants Schmidt and Powers. Defendants' answer states that Jensen acted pursuant to administrative regulations of statewide applicability contained in the Manual of Adult Institution Procedures.[1] Since these regulations are directed to all Wisconsin adult correctional institutions, they would apply to materials plaintiff seeks to read while confined at the Wisconsin Correctional Institution, Fox Lake.[2] Plaintiff's brief brings to my attention a letter from defendants' counsel to plaintiff's counsel at the time of plaintiff's transfer to the Wisconsin Correctional Institution, stating that the books would be prohibited at the Wisconsin Correctional Institution.[3] This letter, together with defendants' reliance on a statewide regulation, lead me to conclude that a live controversy still exists between plaintiff and defendants Schmidt and Powers. The injunctive claim is moot as to defendants Gray, Manthe and Jensen because their authority does not extend beyond the Wisconsin State Prison at Waupun.

## Class Action

■ Plaintiff seeks to maintain this action on behalf of all inmates confined in adult institutions under the jurisdiction of the Division of Corrections of the State of Wisconsin. I find and conclude that this action satisfies the prerequisites to a class action set forth in Rule 23(a), Fed.R.Civ.P.: (1) the class of all persons confined in adult correctional institutions is so numerous that joinder of all members is impracticable; (2) the challenge to a statewide policy raises questions of law and fact common to the class; (3) the plaintiff's claim is typical of the claims of the class; (4) through able counsel, the plaintiff fairly and adequately protects the interests of the class. I find and conclude that this action also satisfies the criterion of Rule 23(b)(2): defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole. Accordingly, the class action may be maintained.

I now turn to plaintiff's pending motion for a preliminary injunction or summary judgment as to the claim for injunctive relief. I find that there is no genuine issue as to the material facts set out under the heading "Facts" below.

## FACTS

While confined at the Wisconsin State Prison in February, 1972, plaintiff ordered three paperback books, *Furry: The Diary of a Babysitter, The Voyeurs,*

---

1. The pertinent provisions are Regulation 4.-13, "Correspondence," and Regulation 4.14, "Periodicals," of the Manual of Adult Institution Procedures. Neither regulation provides an inmate an administrative or judicial hearing to challenge the seizure by corrections officials of written matter mailed to him. Regulation 4.14(B) governs censorship of publications dealing with sexual matters: "*Criteria*

In the judgment of the Wisconsin Division of Corrections, the following types of periodicals constitute a clear and present danger of a breach of prison discipline or security, or some other substantial interference with the orderly functioning of the institution or the rehabilitation of its inmates:

1. *Material of a sexual nature*
Periodicals of a sexual nature which, when taken as a whole, appear to be designed primarily to arouse sexual drives or tend to appeal to the prurient interest

in sex are not approved. Photographs or paintings of nudes in a publication do not, *per se*, preclude the publication from being permitted in the institution if the photos or paintings are supportive or incidental to a theme not designed primarily to arouse sexual desires."

2. It is conceivable that the officials at the Wisconsin Correctional Institution would conduct an independent review of the books and conclude that they are not prohibited under Regulation 4.14. However, defendants have made no showing that the prohibition will be lifted at the Wisconsin Correctional Institution. Therefore, I must follow the usual presumption that an established state of facts continues to exist. 29 Am.Jur.2d, Evidence § 237.

3. Defendants' counsel sent a copy of the letter to the court and I have included it as an appendix to this opinion.

and *The Leather Lovers,* from Barclay House Publishers. When the books arrived at the prison in March, 1972, plaintiff was informed by defendant Jensen that he would not be allowed to receive them. Defendant Jensen's censorship of these books was pursuant to Regulations 4.13, 4.14 of the Manual of Adult Institutions of the Wisconsin Division of Corrections. No judicial review of the decision to deny plaintiff the books was required by the regulations or undertaken by the defendants. Plaintiff was transferred from the Wisconsin State Prison to the Wisconsin Correctional Institution, Fox Lake, in November, 1972. As at the Wisconsin State Prison, Regulations 4.13, 4.14 govern censorship of plaintiff's reading material at the Wisconsin Correctional Institution.

## OPINION

The parties have argued vigorously whether corrections officials may prohibit prisoners from reading materials which are not obscene as a matter of law. I find it unnecessary to decide this issue or to decide whether the censored books are obscene as a matter of law. For the reasons stated herein, I hold that censorship of reading matter ordered by prisoners can be undertaken only in accord with the procedures for prior administrative restraint [4] of expression enunciated in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971). Therefore, I must enjoin defendants Schmidt and Powers from denying plaintiff access to reading matter he has ordered unless they initiate judicial proceedings against the reading matter promptly upon its receipt at the correctional institution.

*Freedman, supra,* held unconstitutional a licensing system established by statute which required approval of mo-

tion pictures by an administrative official before they could be exhibited. The Supreme Court ruled that a movie censorship program must include three procedural requirements. *Freedman, supra,* 380 U.S. at 58–59, 85 S.Ct. at 739:

(1) "First, the burden of proving that the film is unprotected expression must rest on the censor . . . To this end, the exhibitor must be assured by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film."

(2) "Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution."

(3) "[The] procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

The requirements established in *Freedman* were further explained in *Blount, supra.* *Blount* held unconstitutional a statute which authorized the Postmaster General to halt delivery of magazines and other materials that had been found at an administrative hearing to be obscene. The statute was constitutionally defective in that it did not require the Postmaster General to initiate judicial proceedings after an administrative determination that the magazines challenged were obscene. By leaving the burden of instituting judicial proceedings on the magazine distributor the scheme created unacceptable risks of suppression of constitutionally protected speech. 400 U.S. at 418, 419, 91 S.Ct. 423, 27 L.Ed.2d 498.

The Wisconsin correctional system's censorship policy does not satisfy any of the procedural requirements set out in

---

4. A "prior restraint" upon exercise of First Amendment rights is found whenever an individual may read only material which has received the approval of a government cen-

sor. *See* New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L. Ed.2d 822 (1971).

*Freedman* and *Blount*. The question to be decided is whether these requirements are to be discarded when the constitutional interests are asserted from behind prison walls. This question calls for evaluation of the reasons for the *Freedman* requirements in light of the nature of the prisoner's interest and of the countervailing state interests.

██ The Supreme Court has ruled that only a court of law has both the independence and the sensitivity to freedom of expression to mark the boundaries of the First Amendment's protection. *Freedman, supra* 380 U.S. at 58, 85 S.Ct. *Blount, supra* 400 U.S. 734, 13 L.Ed.2d 649 at 417, 419, 91 S.Ct. 423, 27 L.Ed.2d 498. The First Amendment's protection of the freedom to receive ideas of every sort extends to an individual who has been convicted of a crime and imprisoned.[5] The interest of the state in the effective functioning of its correctional institutions can justify some restrictions on the First Amendment rights of a prisoner beyond the restrictions the state may constitutionally impose on those of an unincarcerated citizen. Morales v. Schmidt, 489 F.2d 1335 (7th Cir. Jan. 17, 1973), reh. en banc, May 29, 1973. In the censorship context, *Morales* may mean that corrections officials can ban from the prisons certain publications that cannot be kept from unincarcerated citizens.

██ However wide this censorship power may sweep, it is not without limit. Defendants Schmidt and Powers rely on Wis.Stat. § 53.09[6] for authority to censor plaintiff's books under Regula-

tion 4.13, 4.14. In an opinion cited with approval by the Court of Appeals in *Morales,* the Wisconsin Supreme Court has read First Amendment limitations into § 53.09. State ex rel. Thomas v. State, 55 Wis.2d 343, 357, 198 N.W.2d 675, 682 (1972):

> This statute may be read to require reasonable regulations which effectuate legitimate administrative objectives without infringing the first-amendment rights of prisoners. The statute certainly does not grant all the powers of an absolute censor to the department of health & social services.

The dividing line between publications which may be denied prisoners and those which may not is a matter not of administrative grace but of constitutional right.

██ The preservation of First Amendment rights in the prison, as elsewhere, depends on the procedures as well as the standards by which publications are judged. Speedy judicial proceedings are the only adequate safeguard of these rights.

██ I conclude that in denying plaintiff without judicial process the opportunity to read the books he has ordered, defendants Schmidt and Powers and their agents are depriving him of a right secured to him by the First and Fourteenth Amendments.

### ORDER

Accordingly, it is hereby ordered that this action is dismissed as to defendants Gray, Manthe, and Jensen. It is further ordered that plaintiff's motion for sum-

---

5. Brown v. Peyton, 437 F.2d 1228 (4th Cir. 1971) (corrections officials required to show paramount state interest in prohibiting prisoners from reading Black Muslim publications); Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968) (corrections officials violated First Amendment and Equal Protection Clause in denying black prisoners access to black-oriented publication); Laaman v. Hancock, 351 F.Supp. 1265 (D.N.H.1972) (in action challenging denial of political publications to inmate, corrections officials required to include inmates and professional staff on review committee, to complete review within

seven days of receipt of literature, and to censor literature only if compelling state interest shown); Fortune Society v. McGinnis, 319 F.Supp. 901 (S.D.N.Y.1970) (correction officials' prohibition of newsletter published by ex-convicts organization violated First Amendment).

6. Wis.Stat. § 53.09 provides: ". . . Communication shall not be allowed between inmates and any person outside the prison except as prescribed by the prison regulations."

mary judgment is granted as to the claim for injunctive relief and that defendants Schmidt and Powers and their agents are enjoined from denying published materials to plaintiff and other persons confined at adult institutions under the jurisdiction of the Division of Corrections unless judicial proceedings are instituted against the publications within 15 days from receipt at the institution, or within 15 days from the date of this order, whichever is later.

## APPENDIX

November 29, 1972

Mr. Anthony J. Theodore
Corrections Legal Services
330 East Wilson Street
Madison, Wisconsin 53703

Dear Mr. Theodore:

Re: Gaugh v. Schmidt, et al.
72–C–74.

I have enclosed a copy of a letter sent to me by Gerald Gaugh. As I assume that you are still representing this person, I felt it only appropriate that I forward this matter to you.

In his letter Mr. Gaugh makes reference to a communication from the Warden of the Prison in which the Warden indicates that the books in question had been subsequently destroyed. As you may be aware in previous discussions about this, we indicated that there was substantial confusion as to precisely what had happened to the books, that the usual documents indicating a disposition were not completed because Mr. Gaugh refused to complete them, and that the conclusion that was drawn from the fact that the books were missing was that the books were destroyed.

Previous to this case and others like it, it was the policy at the Prison to destroy contraband or disapproved materials unless the inmate directed otherwise. About the time that the books that gave rise to this suit came into the Prison, that policy was in the process of being changed and it is now the policy to re-

tain or to hold most materials of this nature.

Our best information indicates that no one is quite sure just what did happen to those books. Apparently, Gaugh was recently transferred to the Correctional Institution at Fox Lake and wrote to the Warden requesting that these books be forwarded to Fox Lake for him. In response the Warden essentially replied that books had been destroyed. In doing so, the Warden made an assumption based upon policy and practice that the absent books, as they were not at the Prison, had in fact been destroyed.

Insofar as there are a number of sets of the books, I would assume that this particular issue is of no great significance. The books will be prohibited at Fox·Lake as well as at Waupun.

I would appreciate it if you would contact your client about these matters and advise him about this matter as well as what he should do with his complaint.

Very truly yours,
(s) Robert D. Repasky
Assistant Attorney General

RDR:jp
Enclosure